OPINION
{¶ 1} Defendant-appellant, David Walker, appeals the judgment of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court in part; however we vacate Walker's sentence and remand for resentencing.
 {¶ 2} This case stems from two controlled buys of crack cocaine by a confidential informant named Ryan Johnson, which occurred on March 1 and March 5, 2003. During the first controlled buy, Johnson called and arranged to meet an individual near Jack's Carry-out in Fostoria, Ohio, in order to purchase crack cocaine. Johnson then met with an individual at Jack's Carry-out, and the two individuals walked approximately one block to the intersection of East Center Street and Poplar Street where Johnson purchased crack cocaine. After the sale, Johnson walked down an alley behind a house, which Johnson identified as "Tim's", and then returned to the Fostoria Police Department where he turned over the crack cocaine to the police. Johnson identified Walker from a photo line up as the person who sold him the crack cocaine.
 {¶ 3} During the second controlled buy, Johnson went to the post office in Fostoria, Ohio. While at the post office, Johnson attempted to call an individual he knew as "Champ", but "Champ" did not answer the telephone. Johnson then spotted "Champ" and two females in a vehicle at the post office. Johnson then entered the vehicle, which traveled around the block and stopped in front of Johnson's apartment. Johnson testified that he then purchased crack cocaine. Thereafter, Johnson exited the vehicle and went to the Fostoria Police Department where he turned the crack cocaine over to the police. Johnson identified Walker from a photo line up as the person who sold him crack cocaine.
 {¶ 4} As a result of the two controlled buys, Walker was indicted for trafficking in crack cocaine in violation of R.C. 2925.03(A),(C)(4)(c) and a fourth degree felony; and trafficking in crack cocaine with a specification that the offense was committed in the vicinity of a school in violation of R.C. 2925.03(A),(C)(4)(b), and a fourth degree felony.
 {¶ 5} A jury trial was held and Walker was found guilty. On March 2, 2005, the trial court sentenced Walker to fifteen months on each count. The trial court further ordered the sentences to be served consecutively.
 {¶ 6} Walker's trial counsel filed his initial appeal on April 1, 2005. This court dismissed Walker's appeal for lack of prosecution on December 27, 2005. Thereafter, Walker filed a motion to reopen his appeal on April 11, 2006. This court granted Walker's motion on April 20, 2006.
 {¶ 7} It is from this judgment and sentence that Walker appeals and sets forth five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The Appellant was prejudicial [sic] by the ineffective assistance
 of trial counsel.
 {¶ 8} In his first assignment of error, Walker argues that he received ineffective assistance of counsel because his trial counsel failed to file a motion in limine to keep out evidence of his prior contacts with police, his other court proceedings, and his alleged nicknames. Walker further argues that due to the aforementioned information the jury was prejudiced because the jury had an image of Walker as being a drug dealer. Walker also asserts that his trial counsel was ineffective because this court dismissed his appeal for lack of prosecution due to trial counsel's failure to file the required briefs. According to Walker, his trial counsel's failure to file the required briefs prejudiced him because it caused his appeal to be dismissed and he was delayed in having his appeal heard by this court.
 {¶ 9} It is well-settled that in order to establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense.State v. Kole (2001), 92 Ohio St.3d 303, 306, 750 N.E.2d 148, citingStrickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674. In order to show that an attorney's conduct was deficient or unreasonable, the appellant must overcome the presumption that the attorney provided competent representation by showing that the attorney's actions were not trial strategies prompted by "reasonable professional judgment." Strickland, 466 U.S. at 689. "[T]rial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267, citing State v. Thompson (1987),33 Ohio St.3d 1, 514 N.E.2d 407. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of defense counsel's essential duties to his client. SeeState v. Bradley (1989), 42 Ohio St.3d 136, 141, quoting State v.Lytle (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623.
 {¶ 10} At trial, Detective Michael Clark testified to the following:
 Q Okay. Did you overhear a conversation then, between Ryan Johnson and this, uhm, other individual.
 A Yes.
 Q Did you recognize the voice of the other individual that walked up to him —
 A Yes.
 Q — Mr. Johnson?
 A Yes.
 Q Who did you recognize the voice to be?
 A Of Champ Walker, David Walker.
 Q You've heard his voice before?
 A Many times.
 * * *
 Q Okay. You mentioned that you know this person named
 David Walker.
 A Yes.
 * * *
 Q Okay. You mentioned that you know the defendant, correct?
 A Yes, sir.
 Q Okay. And, how old is Mr. Walker?
 A I believe right now, he's approximately 29, I think he is now.
 Q And, is his full name David C. Walker?
 A Uhm, I've had other occasions with him using the other names during other court proceedings, so David Walker's the one I've always known him as officially.
 Q Does he have any nicknames?
 A Yes, several. He goes by Champ. He goes by Shawn. It depends on what, uhm, what he decides to tell you that day.
 * * *
 {¶ 11} After reviewing the record, we find that Walker failed to establish ineffective assistance of counsel. Although Detective Clark mentioned that he knew Walker, the testimony does not indicate how Detective Clark knew Walker prior to the present case. Moreover, while Detective Clark referred to "other court proceedings," the testimony does not indicate whether the other court proceedings were either criminal or civil in nature, or Walker's involvement in the proceedings. In addition, the nicknames of "Champ" and "Shawn" are not inherently prejudicial. The record does not demonstrate that Detective Clark's statements that he knew Walker, Clark's reference to other court proceedings, or Clark's reference to Walker's nicknames, prejudiced Walker in any way. Walker's argument in this regard is, therefore, without merit.
 {¶ 12} Furthermore, although Walker's appeal was dismissed for lack of prosecution, this court granted Walker's application to reopen his direct appeal based on ineffective assistance of appellate counsel due to his counsel's failure to timely file a brief. Consequently, we find Walker's argument that he received ineffective assistance because the appeal was dismissed to be moot. See State v. De Salvo, 7th Dis. No. 04-MA-127, 2005-Ohio-3312, at ¶ 10. Walker's first assignment of error is thus overruled.
 ASSIGNMENT OF ERROR NO. II The Trial Court erred in finding Appellant guilty, as the verdict wasnot supported by sufficient evidence.
 {¶ 13} In his second assignment of error, Walker asserts the prosecution failed to produce sufficient evidence of Walker's guilt beyond a reasonable doubt. As a basis for this argument, Walker points out that Johnson was a paid confidential informant and was motivated by having charges against him dropped, that Johnson was the only eyewitness, Johnson was in a position to manufacture evidence, and that the police never observed Walker trafficking in drugs.
 {¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89,684 N.E.2d 668. When reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 15} R.C. 2925.03 states:
 (A) No person shall knowingly do any of the following:
 (1) Sell or offer to sell a controlled substance;
 * * *
 (C)Whoever violates division (A) of this section is guilty of one of the following:
 * * *
 (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:
 * * * (b) Except as otherwise provided in division (C)(4)(c), (d), (e), (f), or (g) of this section, if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the fourth degree * * *.
 (c) Except as otherwise provided in this division, if the amount of the drug involved * * * equals or exceeds one gram but is less than five grams of crack cocaine, trafficking in cocaine is a felony of the fourth degree * * *
 {¶ 16} The Ohio Revised Code defines an offense as being committed within the vicinity of a school "if the offender commits the offense * * * within one thousand feet of the boundaries of any school premises * * * ." R.C. 2925.01(P).
 {¶ 17} The prosecution presented the testimony of Sergeant William Brenner, a sergeant at the Fostoria Police Department, regarding the first controlled buy. Sergeant Brenner testified that he searched Johnson, before and after the first controlled buy, and that he did not find any contraband.
 {¶ 18} Detective Michael Clark, a police detective employed by Fostoria, testified that Johnson acted as a confidential informant and that Johnson was paid for participating in the first controlled buy. Detective Clark further testified that he met Johnson at the Fostoria Police Department; that Johnson told him he could purchase crack cocaine from a person he knew as "Champ"; and that Johnson called "Champ" and set up the deal. The transaction was scheduled to occur in the area of Jack's Carry-out in the South Poplar Street area of Fostoria.
 {¶ 19} Detective Clark testified that he placed a transmitting device and a digital recording device on Johnson. Johnson walked to the area of Jack's Carryout with Detective Clark and Sergeant Brenner conducting surveillance approximately a half block away. During the audio surveillance, Detective Clark overheard a conversation between Johnson and another individual, who he recognized as David Walker. Detective Clark testified that during the conversation, Walker asked Johnson to walk with him and the two walked northbound for approximately one block where the transaction took place. Detective Clark also testified that Johnson viewed a photo line up and identified "Champ Walker" as the person from whom he had bought the crack cocaine. On cross-examination, Clark testified that he did not see the funds from the narcotics operation again and that the funds were not found on David Walker.
 {¶ 20} Michael Tambasco, a forensic scientist at the Mansfield Police Department Crime Laboratory, testified that he tested the substance and determined that it consisted of 1.11 grams of crack cocaine.
 {¶ 21} Ryan Johnson, the confidential informant, testified that he called up "Champ" on March 1, 2003 about buying some crack. At trial, Johnson identified "Champ" as the defendant. Johnson testified that he gave "Champ" one hundred dollars and that "Champ" gave him crack. Johnson testified that after he had purchased the drugs he walked down an alley behind "Tim's" house, which was "another house where I used to bump dope out of". On cross-examination, Johnson stated that a kidnapping charge had been dismissed prior to the first buy. Johnson also testified to the following:
 Q Now, Tim's house, I believe you said, is where they used to push drugs out of?
 A Yep.
 Q Okay. And at the time this happened that was still a drug house, correct?
 A Yeah.
 * * *
 Q — had you ever been in Tim's house?
 A Have I been there? Yeah, I've been there.
 Q Okay. And you were very familiar with it?
 A Yeah.
 * * *
 Q Now, when you're walking down the alley, you walked directly behind Tim's house, correct?
 A Yes.
 Q And you didn't know — at that point, you didn't know where Brenner and Clark were, correct?
 A I knew they was in the area.
 Q Okay. But, you couldn't see `em, correct?
 A Correct.
 Q Okay. And, then you walked — you walked down the alley. And did you run — did you run into anybody while you were going down the alley?
 A No.
 Q Okay. So, you walked down the alley and then you end up at, back at Fostoria Police Department, correct?
 A Right.
 Q Okay. And that's when you see Brenner and Detective Clark again, correct?
 A Yes.
 {¶ 22} The prosecution also presented the audio tape recording of the transaction.
 {¶ 23} In regards to the second controlled buy, Detective Clark testified that Johnson set up another purchase of crack cocaine, however, this time Johnson was to meet Walker at the post office in Fostoria. Detective Clark testified that a burgundy vehicle pulled up in front of the post office; that he heard Johnson yell "Champ" at the vehicle when it stopped; and that Johnson then got into the vehicle in the rear passenger side. Detective Clark and Sergeant Brenner, who were both in another vehicle, followed the burgundy vehicle as it traveled westbound to Union Street. The burgundy vehicle then turned right on Union; traveled one block; made another right turn; and then approximately two blocks later the vehicle stopped in front of Johnson's apartment which was located above a pet store. According to Detective Clark, he then heard the transaction take place and Johnson exited the vehicle. Detective Clark stated that the location of St. Wendelin's Elementary School was 40, 50, or 60 feet away from where the vehicle stopped and the elementary school is a parochial grade school which must comply with Ohio laws and minimum standards. Detective Clark testified that Johnson met with him; Johnson turned over the crack cocaine; and Johnson again identified Walker from a photo line-up as the individual who sold him crack cocaine. Detective Clark stated, on cross-examination, that he did not see the second transaction take place other than the back of Johnson's head.
 {¶ 24} Tambasco, a forensic scientist, tested the substance from the second controlled buy and determined that it consisted of 0.83 grams of crack cocaine.
 {¶ 25} Sergeant Brenner testified that he searched Johnson before and after the second controlled buy and did not find any contraband. Sergeant Brenner further testified that he was in a vehicle with Mike [Detective Clark]; the subject came up in a vehicle; and that the confidential informant then got into the vehicle. Sergeant Brenner stated that he and Clark followed the vehicle; the vehicle stopped in front of a pet store; and that he witnessed the confidential informant in the vehicle but he did not see the transaction.
 {¶ 26} Detective Charles Boyer, a detective employed by the Tiffin Police Department, testified that he conducted surveillance during the March 5, 2003 operation. During his surveillance, Detective Boyer pulled out onto East North Street heading northbound, when a maroon car pulled up in front of the pet store. Johnson then exited the vehicle. Detective Boyer further testified that the vehicle was directly behind him while he was waiting for the stop light. Detective Boyer looked in his rearview mirror and he observed a white female driver and a black male by the name of David Walker, aka "Champ", in the maroon vehicle.
 {¶ 27} The confidential informant, Ryan Johnson, testified that he called "Champ" from the police department to set up another hundred dollar buy of dope. Johnson further testified that "Champ" picked him up in a vehicle by the post office on Center Street and they traveled to a location in front of his apartment. Johnson stated that he gave "Champ" one hundred dollars and that "Champ" gave him crack cocaine. Johnson testified that he lived in an apartment above the pet shop and that the transaction occurred in front of the pet shop. Johnson also testified that he was paid for the transaction.
 {¶ 28} Patrolman Sayre, of the Fostoria Police Department, testified that he used a laser range finder to determine that the pet store was 231 feet from the St. Wendelin's Elementary School building.
 {¶ 29} The defense did not present any witnesses at trial.
 {¶ 30} Although Johnson acted as a paid informant, had a kidnapping charge against him dropped before the first buy, and the law enforcement officers never saw the actual transfer of money for drugs, Walker has not established that the evidence was insufficient. The jury heard both Johnson's testimony and the law enforcement officer's audio surveillance recordings of both transactions. Johnson testified that he gave "Champ" one hundred dollars and "Champ" gave him cocaine during both the first and second controlled buys. Furthermore, Johnson identified David Walker from a photo line-up as the individual from whom he purchased crack cocaine following both the first and second controlled buys. In addition, Tamabasco, a forensic scientist, identified the substance from the first controlled buy as consisting of 1.11 grams of crack cocaine, and the substance from the second controlled buy as consisting of 0.83 grams of crack cocaine. The prosecution also presented the audio tape recording of both transactions.
 {¶ 31} In regards to the second controlled buy, Detective Clark testified about the visual surveillance of the burgundy vehicle and Detective Boyer testified that he observed David Walker, aka "Champ" in the maroon vehicle. Johnson also testified that the second transaction occurred in front of his apartment which was located above a pet store. Johnson Sergeant Sayers measured the distance and found that the pet store was located 231 feet from St. Wendlin's Elementary School, which is within 1,000 feet of a school zone.
 {¶ 32} Merely because Johnson was not within the sight of the police at all times and he acknowledged walking behind a known drug house during the first controlled buy the evidence is not thereby rendered insufficient. Law enforcement officers maintained audio surveillance during both transactions. There is no evidence in the record that Johnson manufactured any evidence and Johnson affirmatively testified that "Champ" gave him crack in exchange for money during both controlled buys.
 {¶ 33} When viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find all the essential elements of trafficking in crack cocaine, and trafficking in crack cocaine in the vicinity of a school, proven beyond a reasonable doubt. Walker's second assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. III The Trial Court erred in finding Appellant guilty, as the verdict wasagainst the manifest weight of the evidence.
 {¶ 34} Walker argues, in his third assignment of error, that his conviction was against the manifest weight of the evidence because the paid confidential informant had the opportunity to manufacture evidence, the police officer did not directly observe the drug transactions, the confidential informant was out of the police officer's sight, and the jury heard about nicknames and prior cases which it should not have heard. According to Walker, the jury clearly lost its way and his conviction was against the manifest weight of the evidence.
 {¶ 35} When determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, " `[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E. 2d 717. Because the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility, such matters are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.
 {¶ 36} Given the evidence presented at trial, we are unable to conclude that the jury clearly lost its way in finding Walker guilty of trafficking in cocaine and trafficking in cocaine with a specification that the offense was committed in the vicinity of a school. Although Johnson was a paid confidential informant, the police officers did not see the actual exchanges, and Johnson was temporarily out of the police officers' sight, these facts alone do not compel a finding that Walker's conviction against the manifest weight of the evidence. Police officers maintained audio surveillance of the confidential informant throughout both controlled buys. While Johnson walked behind a known drug house when returning to the police department during the first controlled buy, Johnson testified that he did not meet anyone in the alley. There is no evidence in the record that Johnson manufactured any evidence. Further, Johnson testified that during both controlled buys "Champ" provided him with drugs in exchange for money. Nor did the fact that the jury heard about "other court proceedings" and Walker's nicknames, as previously discussed in assignment of error number one, result in the jury clearly losing its way. We hold that Walker's conviction was not against the manifest weight of the evidence.
 {¶ 37} Walker's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV The Appellant's right to a fair trial was violated under the Ohio and Federal Constitutions and Ohio Rule of Evidence 403(A) when the State was permitted to introduce into evidence inflammatory and irrelevant information where the probative value of the information did not outweigh the prejudicial effect of the jury.
 {¶ 38} In his fourth assignment of error, Walker claims that his prior contacts with police, his other court proceedings, and his alleged nicknames were irrelevant evidence which prejudiced him. Walker further claims that the evidence should not have been introduced at his trial.
 {¶ 39} "The failure to object to evidence at trial constitutes a waiver of any challenge on appeal, except for plain error." State v.Hairston (Oct.18, 2001), 10th Dist. No. 01AP-299, at *3, citingState v. Robertson (1993), 90 Ohio App.3d 715, 728. We recognize plain error "`with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" State v.Landrum (1990), 53 Ohio St.3d 107, 111, quoting State v. Long (1978),53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. Under the plain error standard, an appellant must demonstrate that the outcome of his trial would clearly have been different but for the errors that he alleges. State v. Waddell (1996), 75 Ohio St.3d 163,166, 661 N.E.2d 1043, citing State v. Moreland (1990), 50 Ohio St.3d 58,63, 552 N.E.2d 894.
 {¶ 40} Since Walker did not object to the evidence at trial, we review the evidence under the plain error standard. After reviewing the record, we find that Walker has not demonstrated that the outcome of his trial clearly would have been different but for Detective Clark's mention of prior contacts with police, previous court proceedings, and his use of the nicknames "Champ" and "Shawn". Thus, Walker's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. V The Trial Court erred to appellant's prejudice by imposing consecutivesentences for his offenses.
 {¶ 41} Walker argues, in his fifth assignment of error, that the trial court lacked the authority to order Walker's sentences to be served consecutively. As a basis for this argument, Walker points out that the Ohio Supreme Court held R.C. 2929.14(E)(4) unconstitutional in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio856, 845 N.E.2d 470. Walker requests this court to order his sentences to be served concurrently.
 {¶ 42} In Foster, the Ohio Supreme Court held portions of Ohio's sentencing framework unconstitutional. Id. Specifically, the Ohio Supreme Court held R.C. 2929.14(E)(4) unconstitutional because the statute required judicial factfinding based on facts that were not found by a jury nor admitted by the defendant. Id. at paragraphs one and three of the syllabus, citing Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.
 {¶ 43} The Ohio Supreme Court further held that R.C. 2929.14(E)(4) was capable of being severed and that after severance "judicial factfinding is not required before imposition of consecutive prison terms." Id. at paragraph four of the syllabus, citing United States v. Booker (2005),543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621. The court further held that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus.
 {¶ 44} Because Walker was sentenced under a statute found unconstitutional by the Ohio Supreme Court, we vacate the sentence and remand to the trial court for resentencing in accordance with the court's decision in Foster. See Id. at paragraph two of the sentence. Accordingly, we need not determine whether consecutive sentences are proper since the trial court must consider this issue in its resentencing.
 {¶ 45} The judgment of the Seneca County Common Pleas Court is affirmed in part; however, pursuant to Foster, we vacate Walker's sentence and remand the matter for further proceedings consistent withFoster.
Judgment Affirmed in Part, Sentence Vacated and Cause Remanded.
 ROGERS and SHAW, JJ., concur.