OPINION
{¶ 1} Defendant-appellant, Ricky L. Baker, appeals a decision of the Preble County Court of Common Pleas convicting him of importuning, gross sexual imposition, sexual imposition, and rape. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} While attending a church function on the night of October 4, 2006, 13-year-old L.B. confided to her pastor that she had been sexually abused for years by appellant, her adoptive father. The pastor reported the allegations to the police. Deputy Josh Wing and *Page 2 
Captain Mike Spitler of the Preble County Sheriff's Office arrived at the church to question L.B. Shorty after, the officers called Detective Steven Bratton of the Preble County Sheriff's Office and Tonya Hickman of Preble County Children's Services to the scene.
 {¶ 3} After interviewing L.B., the officers drove to appellant's house around 1:00 a.m. Appellant's wife answered the door and permitted the officers to enter the residence. The officers asked appellant to accompany them to Bratton's unmarked cruiser for questioning. Appellant complied. During the interview, appellant admitted to touching L.B. and engaging in oral sex with her. Approximately five minutes into the interview, appellant asked for an attorney and the questioning ceased. Appellant was then arrested and transported to jail.
 {¶ 4} In November 2006, the grand jury returned an indictment against appellant which included two counts of importuning in violation of R.C.2907.07(B), a fifth-degree felony; one count of gross sexual imposition in violation of R.C. 2907.06(A)(4), a third-degree felony; one count of sexual imposition in violation of R.C. 2907.06(A)(4), a third-degree misdemeanor; and two counts of rape in violation of R.C.2907.02(A)(1)(b), a first-degree felony. Appellant moved to suppress the statements he made to police. After a hearing, the trial court denied the motion. Appellant pled no contest to the charges, was found guilty, and was sentenced to a total of six years in prison. This appeal followed, in which appellant raises one assignment of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DETERMINED THAT THE APPELLANT WAS QUESTIONED BY POLICE OFFICERS AT A TIME IN WHICH THE APPELLANT WAS NOT IN POLICE CUSTODY FOR PURPOSES OF MIRANDA WARNINGS."
 {¶ 7} Appellant argues that the statements he made while seated in Bratton's cruiser were the product of custodial interrogation and warranted suppression because Miranda *Page 3 
warnings were not administered to him before the questioning began. Appellant insists that no objective, reasonable person in his place would have felt free to leave and, as a result, he was in custody.
 {¶ 8} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 329, 332. The trial court, as the trier of fact, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Mai, Greene App. No. 2005-CA-115, 2006-Ohio-1430, ¶ 9. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 {¶ 9} The Miranda warnings serve as prophylactic safeguards to protect a person's Fifth Amendment privilege against compelled self-incrimination. Miranda v. Arizona (1966), 384 U.S. 436, 478-79,86 S.Ct. 1602. The police are not required to issue Miranda warnings to every individual they question. Oregon v. Mathiason (1977),429 U.S. 492, 495, 97 S.Ct. 711. Rather, such warnings must be issued only when the police subject a suspect to "custodial interrogation."Miranda at 444. See, also, State v. Biros, 78 Ohio St.3d 426, 440,1997-Ohio-204. Therefore, the threshold inquiry is whether the individual being questioned was in custody at the time of the interrogation. California v. Beheler (1983), 463 U.S. 1121, 1125,103 S.Ct. 3517; Mathiason at 495.
 {¶ 10} To determine that a person was in custody for Miranda purposes, there must have been either a formal arrest or a restraint of the individual's freedom of movement commensurate with that of a formal arrest. Beheler, 436 U.S. at 1125. This is a fact-intensive inquiry necessitating an examination of the totality of the circumstances. SeeBerkemer v. McCarty (1984), 468 U.S. 420, 442, 104 S.Ct. 3138; State v.Gumm, 73 Ohio St.3d 413, 429, 1995-Ohio-24. The relevant inquiry is whether an objective, reasonable person in the *Page 4 
suspect's place would have felt that he was not free to leave.Berkemer at 442.
 {¶ 11} It is undisputed that Miranda warnings were not administered to appellant prior to being questioned in Bratton's cruiser. Clearly, appellant was subject to interrogation. Bratton expressly questioned appellant to investigate the allegations made against him by L.B.Rhode Island v. Innis (1980), 446 U.S. 291, 300-01, 100 S.Ct. 1682. The central issue is thus whether or not appellant was in custody forMiranda purposes during this interrogation.
 {¶ 12} The trial court determined that appellant was not in custody, finding instead that the in-cruiser conversation constituted a police interview during the normal course of a criminal investigation. After thoroughly reviewing the record, we agree. Shortly after Bratton had finished interviewing L.B., appellant phoned the church to find out why L.B. had not returned home from the church function. L.B. informed appellant that "she told them," after which appellant said "you're not coming home, are you?" Following this conversation, the officers believed it imperative that they make contact with appellant as soon as possible. This was because they sought to prevent him from harming himself or his wife, taking someone hostage, or leaving the house. In addition, the officers had to make contact with appellant and his wife because L.B. was not returning home and needed to be placed somewhere else for the night.
 {¶ 13} The officers arrived at appellant's residence shortly after 1:00 a.m. Wing and Spitler drove separately in their marked cruisers while Bratton drove his unmarked cruiser, accompanied by Ms. Hickman. It was raining heavily when the group arrived. Wing, Spitler, and Bratton went to the door and knocked. Appellant's wife permitted the officers to enter the residence; no force or threats were used to gain entrance.
 {¶ 14} When appellant emerged from the rear of the house, Spitler asked him to accompany them outside to talk. The house was a 1,200-square foot residence with an open floor plan and a loft-style upstairs. Due to the small size of the house and the sensitive nature *Page 5 
of the subject, the officers wished to speak to appellant in a private place where they could conduct the interview undisturbed. As it was still raining heavily outside when appellant and the officers exited the house, the interview was conducted in Bratton's cruiser. The fact that the conversation took place in a police cruiser, alone, does not mean that appellant was in custody. See State v. Davis (July 23, 1999), Hamilton App. No. C-980933, 1999 WL 518551, at *2; State v. Johnson (May 1, 2000), Clermont App. No. CA99-06-061, at 8.
 {¶ 15} No force was required to remove appellant from the residence or to get him in the cruiser for questioning. Appellant agreed to accompany the officers outside, and even began exiting the house in his bare feet until Wing suggested he put on shoes. Appellant willingly stepped outside and walked down the driveway. He was not handcuffed or told he was under arrest. Per Bratton's instruction, appellant sat in the front passenger seat of the unmarked cruiser, opening and closing his own door. Bratton sat in the front driver seat while Wing sat in the back seat directly behind appellant.
 {¶ 16} According to the testimony, Bratton's cruiser strongly resembled a civilian vehicle. There was a police radio inside, but no cage separating the front seats from the back seat. There were four doors, each with its own functioning lock and handle. The doors remained unlocked for the duration of appellant's interview. At no time was appellant told he could not leave the vehicle if he so chose. In addition, the entire interview took place in front of appellant's house, in public surroundings familiar to him. Cf. Davis at *2; State v.Walker (Sept. 16, 1997), Franklin App. No. 97APA02-212, 1997 WL 578946, at *3.
 {¶ 17} After the two officers and appellant got into the vehicle, Bratton began asking appellant questions about the allegations of sexual abuse conveyed to them by L.B. As stated, it was at this time that appellant admitted to touching L.B. and engaging in oral sex with her. When appellant unequivocally invoked his right to counsel, the interview ceased. Bratton then informed appellant that he was under arrest. Appellant stated that he thought he *Page 6 
was already under arrest, but afterward acknowledged that he had come to the car and spoken with Bratton voluntarily.
 {¶ 18} Even if this acknowledgment was "coaxed" by Bratton, as appellant claims on appeal, we are still constrained to apply an objective, reasonable person standard to determine whether appellant was in custody. "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime."Mathiason, 429 U.S. at 495. Under the facts of this case, an objective, reasonable person would have been aware that he was a suspect facing some very serious allegations. However, we believe that an objective, reasonable person would not have felt that he was under arrest prior to the point at which Bratton advised appellant he was under arrest in view of the facts and circumstances of the case.
 {¶ 19} Wing and Bratton both testified that there were no threats or promises of leniency in an attempt to obtain information from appellant. Appellant does not contend that the officers utilized any physical intimidation. Also, the interview lasted only five minutes. Bratton testified that it was a non-custodial interview, and that appellant was free to leave at any time. In no way was appellant's freedom to depart restricted prior to his arrest. Appellant was interviewed in an unmarked, unlocked police cruiser while seated in the front passenger seat. At no time up until appellant unequivocally invoked his right to counsel did any of the officers say he was under arrest. In addition, appellant was not handcuffed until after Bratton placed him under arrest.
 {¶ 20} In view of the aforementioned facts, it is evident that appellant was subjected to a brief investigative interview rather than custodial interrogation. The officers were under a duty to investigate the serious allegations made by L.B., and interviewed appellant as part of this investigation. "Miranda was not intended to hamper the ability of law enforcement officers *Page 7 
to legitimately investigate crimes. * * * Where the suspect is not in custody, the fact that an officer may consciously seek to elicit incriminating statements, even where the suspect is the focus of the investigation, does not necessarily entitle the suspect to aMiranda warning." Johnson, Clermont App. No. CA99-06-061 at 7, citingMinnesota v. Murphy (1984), 465 U.S. 420, 431, 104 S.Ct. 1136. (Citations omitted.)
 {¶ 21} We conclude that, under the totality of the circumstances, appellant was not in custody when questioned by Detective Bratton.Miranda warnings were therefore unnecessary. Accordingly, the trial court properly overruled appellant's motion to suppress.
 {¶ 22} The assignment of error is overruled.
 {¶ 23} Judgment affirmed.
BRESSLER and POWELL, JJ., concur. *Page 1