OPINION *Page 2 
{¶ 1} Defendant-appellant, Daniel E. Stiles (hereinafter "Stiles"), appeals the Allen County Court of Common Pleas judgments denying his motion to suppress, denying his motion to sever counts in the indictment, judgment of conviction, and judgment of sentence. For the reasons that follow, we affirm.
 {¶ 2} On March 23, 2007, law enforcement responded to an emergency phone call from 365 South Stevick Road in Allen County reporting an unresponsive child, later identified as two-year old Mia Jorris ("Mia"), the daughter of Stiles' girlfriend. (May 31, 2007 Tr. at 8-9). When law enforcement arrived at the scene, Mia was laying on the floor unresponsive. Stiles and Mia's brother, Matthew Jorris ("Matthew"), were present at the scene, and Stiles indicated that Mia was injured after falling off her bed. (Id. at 9-10). Mia was taken to St. Rita's Hospital but eventually died. An autopsy revealed that Mia had suffered blunt force trauma to her abdomen, which caused severe internal lacerations and bleeding. (State's Exs. 50, 52). The coroner also discovered that Mia's clavicle and several of Mia's ribs were fractured; and some of the rib fractures were old and healing. (Id.). It was also discovered that Matthew suffered from blunt force trauma to his abdomen. (State's Ex. 53). Matthew underwent surgery to remove the damaged portion of his colon. (Id.). Following the medical reports and coroner's report, the State pursued charges against Stiles. *Page 3 
 {¶ 3} On May 3, 2007, the Allen County Grand Jury indicted Stiles on six counts, including: count one of murder in violation of R.C. 2903.02(B); counts two and three of felonious assault, violations of R.C. 2903.11(A)(1) and second degree felonies; count four of attempted murder in violation of R.C. 2923.02(A) and 2903.02(B); counts five and six of felonious assault, violations of R.C. 2903.11(A)(1) and second degree felonies. Two felonious assault charges related to Mia, and two related to Matthew. (Doc. No. 3). On this same date, the trial court determined Stiles was indigent and appointed counsel. (Doc. No. 8).
 {¶ 4} On May 7, 2007, Stiles was arraigned and entered pleas of not guilty. On May 23, 2007, Stiles filed a motion to suppress statements he had made to law enforcement alleging a Miranda violation. (Doc. No. 23). On May 31, 2007, the trial court held a hearing on the motion but, on June 12, 2007, overruled the motion. (Doc. No. 39).
 {¶ 5} On July 9, 2007, Stiles filed a motion for in camera review of Allen County Children Services' records for Mia and Matthew alleging that the records contain information pertinent to his defense. (Doc. No. 41). On July 10, 2007, the trial court granted the motion for incamera review. (Doc. No. 42). On February 25, 2008, Stiles filed a motion to sever counts three and six from the indictment, which the trial court denied the next day. (Doc. Nos. 107, 111).
 {¶ 6} On March 4-7, 2008, a jury trial was held, and, on March 8th, the jury found Stiles guilty on all counts. (Doc. Nos. 133-38). On March 10, 2008, the *Page 4 
trial court sentenced Stiles to: fifteen (15) years to life imprisonment on count one, murder; eight (8) years on counts two, three, five, and six, felonious assaults; and ten (10) years on count four, attempted murder. The trial court ordered that the terms imposed run consecutively for an aggregate term of fifty-seven (57) years to life imprisonment. (Doc. Nos. 140, 160).
 {¶ 7} On March 13, 2008, Stiles filed his notice of appeal. Stiles now appeals and asserts seven (7) assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESSSTATEMENTS.
 {¶ 8} Stiles, in his first assignment of error, argues that the trial court erred in denying his motion to suppress statements he made to law enforcement because the statements were made following his invocation of his right to counsel. The State, on the other hand, argues that Stiles re-initiated conversation with law enforcement after asserting his right to counsel and signed a waiver of counsel; and therefore, the trial court did not err in denying the suppression motion. We agree with the State.
 {¶ 9} A review of the denial of a motion to suppress involves mixed questions of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the *Page 5 
credibility of witnesses. State v. Carter (1995), 72 Ohio St.3d 545,552, 651 N.E.2d 965. When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. Burnside, 2003-Ohio-5372, at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. State v. McNamara (1997),124 Ohio App.3d 706, 710, 707 N.E.2d 539.
 {¶ 10} A motion hearing was held on May 31, 2008. At the hearing, Allen County Sheriff's Deputy Michael Stechschulte testified that, on March 23, 2007, he was the first to respond to an emergency call regarding an unresponsive child at 365 South Stevick Road. (May 31, 2008 Tr. at 8-9). Deputy Stechschulte testified that when he arrived at the scene he "found a small child lying on the floor in the living room uh, unresponsive" with Stiles. (Id. at 9). Deputy Stechschulte further testified that while he began CPR on the child, later identified as Mia, he asked Stiles about Mia's medical history and what had happened. (Id. at 10). Deputy Stechschulte testified that he asked these questions for medical purposes and that Stiles was not in custody. (Id. at 11).
 {¶ 11} Allen County Sheriff's Office Investigator Mark Murphy testified that he responded to St. Rita's hospital following the report of an unresponsive child to ask the person responsible for the child what had happened. (Id. at 12-14). Murphy testified that he talked with Stiles in a small private room often used by *Page 6 
clergy at St. Rita's. (Id. at 15). Murphy testified that Stiles was not in custody at that point, and he was free to leave the hospital and, in fact, did so. (Id.). Murphy estimated that the conversation lasted forty-five minutes to an hour. (Id. at 16).
 {¶ 12} Murphy testified that he talked with Stiles a second time around 1:30 a.m. on March 25, 2008 after Stiles was arrested on unrelated failure to appear warrants. (Id. at 16-17). On that day, Murphy talked with Stiles in one of the Sheriff's Office interview rooms. (Id. at 17). Murphy testified that since Stiles was in custody, he informed him of his Miranda rights and had him sign a waiver of those rights. (Id. at 17-18); (State's Ex. 1). At some point during the interview, Stiles indicated that he wanted an attorney, so Murphy terminated the interview. (Id. at 19). Murphy testified that, at that point, Stiles indicated that he wanted to talk with another officer:
 Q: Can you clarify kind of the order of how that all happened? A: Yeah, uh, Daniel stated that the interview was over, he was done, that he would just get an attorney, I told him that's fine. I stood up to leave, he stood up kind of in an aggressive manner, I told him to sit down. It got loud, at that time Major Crish uh, knocked on the door, opened it and said, "Murph," and he kind of did his hand like this, and when I uh, turned to Major Crish I said, "He said he wanted to get an attorney." And at that time, Daniel said, "Can I talk to you? Hey, can I talk to you? I want to talk to you," to Major Crish.
(Id. at 20). Murphy testified that he then left the room, and Major Crish obtained another pre-interrogation advice of rights form and went back into the interview room. (Id.). Murphy testified that neither he nor Major Crish said anything to *Page 7 
Stiles after he requested counsel but before he asked to talk with Crish, and Stiles did not make any statements during that time. (Id. at 20-21).
 {¶ 13} On cross-examination, Murphy testified that he interviewed Stiles twice, once at St. Rita's on March 23rd and once at the Sheriff's Office on March 25th. (Id. at 21). Murphy testified that he initiated contact with Stiles on the 25th and that the time of that contact was around 1:30 a.m. (Id. at 22-23). Murphy admitted that he did not record the interview, but he testified that it lasted approximately forty-five minutes to an hour. (Id. at 24). Murphy did not recall whether he asked Stiles if he wanted a beverage or if he allowed Stiles to smoke. (Id.). Murphy testified that from the time Stiles asked for a lawyer to the time he asked to talk with Crish was probably around one minute. (Id. at 26). Murphy testified that he was not present with Stiles during the interview with Crish, and that he has not had contact with Stiles since the March 25th interview. (Id. at 27).
 {¶ 14} Allen County Sheriff's Office Major Sam Crish testified that on March 25th he was contacted by the Sheriff's Office and informed that Stiles would be brought to the office on bench warrants. (Id. at 31). Crish informed the office that he was in route and that Investigator Murphy should be contacted. (Id.). Crish testified concerning how he came to talk with Stiles:
 A: Investigator Murphy was interviewing Dan in the interview room. I was sitting in my office which is one slot over. I — as I'm sitting there, I heard it start getting loud in there, didn't know what was going on. I walked in, opened the door, and Investigator Murphy — I referred to him as Murph — I opened *Page 8 the door and I said, "Murph," motioned him to walk out. As I'm standing at the door, Daniel says, "I want to talk to you. Can I talk to you?" Repeatedly.
 * * *
 A: * * * Dan was pointing to me saying, "Can I talk to you? I want to talk to you," repeatedly. And I said, "Yes." As I said yes, Investigator Murphy said that he wanted an attorney. He continued to ask to speak to me. And I'm standing at the door with the door open, Investigator Murphy starts to walk away, and I said, "Do you want to speak to me without an attorney?" He said, "Yes." I walked and got a pre-interrogation advice form, a tape recorder, and walked back in.
(Id. at 32-33). Crish testified that he advised Stiles of his rights, and that Stiles signed a waiver of rights prior to the interview. (Id. at 33-34); (State's Ex. 2). Crish testified that he recorded the interview, which lasted approximately one hour and forty-five minutes. (Id. at 34).
 {¶ 15} Crish testified that he spoke with Stiles again on March 26th after he was contacted by the Sheriff's Office booking department and informed that Stiles was requesting to speak with him. (Id. at 35). Stiles was transported to the detective bureau where Crish, again, advised him of his rights, and Stiles signed another waiver of rights. (Id. at 35-36); (State's Ex. 3). Crish testified that he taped this interview and it lasted approximately one hour. (Id. at 36).
 {¶ 16} Crish testified that he interviewed Stiles again on March 27th. (Id.). Crish testified that he was at the Lima Municipal Court when Stiles was there for his arraignment. (Id.). Crish testified that Stiles was in the jury box and he was *Page 9 
standing in the back by the doors when Stiles motioned to him with his hand and indicated that he wanted to talk with him. (Id. at 36-37). Stiles was transported, again, to the Sheriff's Office following his arraignment. (Id. at 37). Crish testified that before they went to the interview room he asked Stiles, "[y]ou're requesting to see me correct?" and Stiles answered "Yes." (Id.). Crish, again, advised Stiles of his rights and had him sign a waiver. (Id. at 37-38); (State's Ex. 4). Crish also testified that he stated to Stiles, "[j]ust real quick, so I understand, you just left court. You were — have been appointed an attorney, do you still want to see me?" and Stiles answered "Yes." (Id. at 38). Crish also testified that he did not solicit any of the contacts between Stiles and himself. (Id. at 39). According to Crish, Stiles appeared to understand his rights and answer questions in a normal manner. (Id. at 39).
 {¶ 17} Stiles did not testify at the hearing. The four signed waiver of rights forms were admitted into evidence, and the parties stipulated to the admission of audio recordings of the March 25, 26, and 27, 2007 interviews, which the trial court considered. (State's Exs. 1-4); (Doc. No. 39); (Joint Exs. 1-4). Based upon all the aforementioned evidence, the trial court concluded that: (1) Stiles was not in custody when Deputy Stechsculte questioned him at 365 South Stevick Road nor when Investigator Murphy questioned him at St. Rita's; and therefore,Miranda did not apply; (2) the statements were made voluntarily; (3) during each of the interviews Stiles was admonished of his rights, said he understood his *Page 10 
rights, waived his rights, and agreed to speak to law enforcement; (4) Stiles reinitiated the interview on March 26th when he asked to speak with Major Crish and his statements were voluntarily made; and therefore, they could be used against him. (Doc. No. 39).
 {¶ 18} Having reviewed the record, we conclude that the trial court's findings of fact are supported by competent credible evidence.Burnside, 2003-Ohio-5372, at ¶ 8. It is clear that before each custodial interview, Stiles was advised of his rights and signed a waiver of those rights. (State's Exs. 1-4). Furthermore, both Murphy and Crish testified that Stiles initiated further communication with Crish after asserting his right to counsel. Crish even asked Stiles if he wanted to talk to him without an attorney when he had been appointed one, and Stiles indicated that he wanted to talk.
 {¶ 19} The trial court's conclusions of law are also correct. As the trial court noted, the Court in Edwards v. Arizona stated that: "an accused * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,unless the accused himself initiates further communication, exchanges, or conversations with the police." (1981), 451 U.S. 477, 484-85,101 S.Ct. 1880, 68 L.Ed.2d 378. See, also, Oregon v. Bradshaw (1983),462 U.S. 1039, 1044, 103 S.Ct. 2830, 77 L.E.2d 405. If the accused invoked his right to counsel, the accused's subsequent statements may be used against him if the accused both: (1) *Page 11 
initiated further discussions with the police; and (2) knowingly and intelligently waived the right he had invoked. Smith v. Illinois (1984),469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488. Whether the accused knowingly and intelligently waived his right to counsel "depends `upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused."'Bradshaw, 462 U.S. at 1046, quoting North Carolina v. Butler (1979),441 U.S. 369. 374-75, 99 S.Ct. 1175, 60 L.Ed. 2d 286. See, also, State v.Brewer (1990), 48 Ohio St.3d 50, 58, 549 N.E.2d 491 (age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment, and the existence of threat or inducement are all factors to be considered).
 {¶ 20} The record indicates, as the trial court found, that Stiles initiated further discussions with Major Crish on March 26th and 27th after invoking his right to counsel. The record also indicates that Major Crish advised Stiles of his rights prior to each of these interviews and reminded him that he had been appointed counsel. Stiles, nonetheless, decided that he wanted to talk with Crish and waived his rights. (State's Exs. 1-4). Furthermore, according to the testimony, Stiles stated that he understood his rights and signed waivers. The interviews were reasonable in length, the longest being one hour and forty five minutes. The interviews, with apparently the exception of the second with Investigator Murphy, were cordial and non-abusive. When Stiles became upset during the second *Page 12 
interview, Major Crish entered the room and motioned for Murphy to leave. The in-custody interviews were held on three different days, and two of those were initiated by Stiles. There was no evidence of physical deprivation, mistreatment, threats, or improper inducement of any kind. Overall, Stiles appeared very willing to discuss things with Major Crish, as evidenced by the fact that he initiated the discussions. Under the facts and circumstances of this case, we conclude, as the trial court concluded, that Stiles knowingly and voluntarily waived his right to counsel and right to be silent; and therefore, the trial court did not err in denying his motion to suppress.
 {¶ 21} Stiles' first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT COMMITTED ERROR BY DENYING THE DEFENDANT'S MOTION TOSEVER COUNTS IN THE INDICTMENT.
 {¶ 22} In his second assignment of error, Stiles argues that the trial court erred in denying his motion to sever counts three and six of the indictment. Specifically, Stiles argues that the trial court's reliance on State v. Sexton (Mar. 9, 1998), 5th Dist. Nos. 1996CA00306, 1996CA00367 was misplaced. He also argues that the evidence on counts three and six was not simple and direct; and therefore, the counts should have been severed. The State, however, argues that Stiles failed to renew his motion for severance at the close of the State's evidence or at the close of all evidence; and therefore, the issue is waived. The State further *Page 13 
argues that the trial court did not abuse its discretion in finding that the evidence here was both admissible under Evid. R. 404(B) and was simple and distinct. We agree with the State.
 {¶ 23} A defendant's failure to renew a motion to sever at either the close of the State's case or the close of all evidence waives the issue on appeal. State v. Strobel (1988), 51 Ohio App.3d 31, 33,554 N.E.2d 916; State v. Miller (1995), 105 Ohio App.3d 679, 691, 664 N.E.2d 1309;State v. Walker (1990), 66 Ohio App.3d 518, 522, 585 N.E.2d 848;State v. Brady (1988), 48 Ohio App.3d 41, 44, 548 N.E.2d 278; State v.Owens (1975), 51 Ohio App.2d 132, 146, 366 N.E.2d 1367. But, see,State v. Miller, 5th Dist. No. 2003CA00273, 2004-Ohio-3716, ¶ 15, fn. 1. Stiles failed to renew his motion for severance at the close of the State's case or at the close of all the evidence. (Mar. 4-7, 2008 Tr. Vol. 3 at 576-78); (Mar. 4-7, 2008 Tr. Vol. 4 at 670-72). Therefore, Stiles has waived this issue.
 {¶ 24} Even if Stiles had not waived this issue, the trial court did not err in overruling the motion to sever. "The law favors joining multiple offenses in a single trial under Crim. R. 8(A) if the offenses charged `are of the same or similar character.'" State v. Sapp,105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 69, citing State v.Lott (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, quoting State v.Torres (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288, fn. 2. To prevail on a claimed error for failing to sever, appellant must show: *Page 14 
 (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.
State v. Schaim (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, citingTorres, 66 Ohio St.2d 340, at syllabus. To determine whether a defendant would suffer prejudice by the joinder of the offenses at trial, a court must determine "(1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." Id., citing State v.Hamblin (1988), 37 Ohio St.3d 153, 158-59, 524 N.E.2d 476; Drew v.United States (C.A.D.C., 1964), 331 F.2d 85.
 {¶ 25} Counts three and six of the indictment charged Stiles with felonious assault as to Mia and Matthew, respectively. In counts three and six the State alleged that:
 COUNT THREE: From on or about the 30th day of December, 2006 to on/about the 22nd day of March, 2007 the Defendant did knowingly cause serious physical harm to Mia Jorris, DOB 1/15/05 by leaving multiple bruises and bitemarks about her body, fracturing her right clavicle and fracturing multiple ribs, at 365 S. Stevick Road, Lima, Allen County Ohio.
 COUNT SIX: From on/about the 7th day of September, 2006 to on/about the 22nd day of March, 2007, the Defendant did knowingly cause serious physical harm to Matthew Jorris, DOB 5/13/03, by causing the child to suffer a fractured leg. *Page 15 
(Bill of Particulars, Doc. No. 69). In counts one, two, four, and five the State alleged that:
 COUNT ONE: On/about the 23rd day of March, 2007, the Defendant, did cause the death of Mia Jorris, DOB 1/15/05, as a proximate result of committing a felonious assault upon said child as described in Count Two below at 365 S. Stevick Road, Lima, Allen County, Ohio.
 COUNT TWO: On/about the 23rd day of March, 2007, the Defendant, did knowingly cause serious physical harm to Mia Jorris, DOB 1/15/05 by striking her with such force that she suffered from multiple injuries including, but not limited to: blunt force trauma to the abdomen, multiple rib fractures, a contusion hemorrhage to her lung, atelectasis of lungs, subgaleal hemorrhages to the left fronal an parietal area, laceration of the lesser omentum, laceration of the greater omentun near tip of gallbladder, laceration of mesentery, transaction of the duodenum just past the C-loop and laceration of caudate lobe of liver, at 365 S. Stevick Road, Lima, Allen County, Ohio.
 COUNT FOUR: On/about the 23rd day of March, 2007, the Defendant, did attempt to cause the death of Matthew Jorris, DOB 5/13/03, as a proximate result of committing a felonious assault upon said child as described in Count Five below at 365 S. Stevick Road, Lima, Allen County, Ohio.
 COUNT FIVE: On/about the 23rd day of March 2007, the Defendant, did knowingly cause serious physical harm to Matthew Jorris, DOB 5/13/03, by striking him with such force that he suffered multiple injuries, including but not limited to: blunt force trauma to the abdomen, a transverse colon injury, a retroperitoneum injury and a small intestine injury, at 365 S. Stevick Road, Lima, Allen County, Ohio.
(Doc. No. 69). Considering the bill of particulars, the discovery filed, the Defendant's statements, along with arguments presented at the motion hearing, the trial court concluded that the evidence pertinent to counts three and six was simple *Page 16 
and distinct. (Feb. 26, 2008 JE, Doc. No. 111). The trial court further concluded that the evidence presented on counts three and six would be admissible at trial under Evid. R. 404(B)'s "other acts" provision. (Id.).
 {¶ 26} Based on our review of the record, we cannot conclude that the trial court abused its discretion by denying Stiles' motion to sever. The facts and circumstances surrounding the counts were simple and distinct. All the crimes were alleged to have taken place at the same location and within one and half years of each other. Furthermore, the same evidence that would have been presented for purposes of count three, felonious assault as to Mia, could have been presented for purposes of count one, murder of Mia as a result of the assault under Evid. R. 404(B). This is true with regard to counts three and six as well.
 {¶ 27} In addition, the trial court's citation to State v.Sexton, supra, was not in error. Although Sexton involved a rape, its general proposition that an escalating pattern of abuse can be relevant and inextricably linked to the charged crime is persuasive here because the pattern of violence against Mia and Matthew eventually led to death. We also note that evidence of Stiles' prior child abuse, including the facts and circumstances surrounding counts three and six, would be admissible against him under Evid. R. 404(B) to rebut his allegation that the children's injuries were mistakes or accidents. State v. Brooks
(Sept. 25, 2001), 10th Dist. No. 00AP-1440, at *11.
 {¶ 28} For all these reasons, Stiles' second assignment of error is overruled. *Page 17 
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT ERRED BY NOT ALLOWING THE DEFENDANT, THOUGH [SIC]COUNSEL, TO MEANINGFULLY PARTICIPATE IN THE IN CAMERA INSPECTION OFRECORDS FROM THE ALLEN COUNTY CHILDREN SERVICES BOARD.
 {¶ 29} In his third assignment of error, Stiles argues that the trial court erred by failing to allow counsel to participate in the court'sin camera inspection of children services' records and by failing to release all pertinent records. The State, on the other hand, argues that the trial court did not abuse its discretion by conducting an incamera review of the records and releasing those records that involved Stiles. We agree with the State.
 {¶ 30} "[T]he results of an in-camera review by a judge, and the judge's determinations of what is discoverable are evaluated by an appellate court under an abuse of discretion standard." DePaul v. St.Elizabeth Health Center, 7th Dist. No. 03 MA 137, 2004-Ohio-4992, ¶ 6, citing Radovanic v. Cossler (2000), 140 Ohio App.3d 208, 213,746 N.E.2d 1184. An abuse of discretion is more than an error in law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Tracy v. Merrill-Dow Pharmaceuticals, Inc. (1991),58 Ohio St.3d 147, 152, 569 N.E.2d 875.
 {¶ 31} Stiles' argument lacks merit. Initially, we note that Stiles never requested to participate in the in camera review in his motion before the trial court, but instead, raises this issue for the first time on appeal. (Doc. No. 41). An *Page 18 
appellant's failure to raise an issue with the trial court constitutes a waiver of that issue absent plain error. State v. Underwood (1983),3 Ohio St.3d 12, 13, 444 N.E.2d 1332. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Wickline (1990),50 Ohio St.3d 114, 120, 552 N.E.2d 913. Furthermore, "[n]otice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.
 {¶ 32} Stiles has failed to show plain error. Pursuant to R.C. 2151.421(H)(1), child abuse investigation reports are confidential records not subject to Ohio's public records law. State ex rel. Renfrov. Cuyahoga County Dept. of Human Servs. (1990), 54 Ohio St.3d 25, 27,560 N.E.2d 230. To ensure a fair trial, a defendant has a right to anin camera review of child abuse records. Pennsylvania v. Ritchie (1987),480 U.S. 39, 60, 107 S.Ct. 989, 94 L.Ed.2d 40. However, Stiles does not have a right, even through counsel, to inspect the records himself. In fact, the Court in Ritchie explicitly stated, in pertinent part, that:
 We find that [the defendant's] interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for in camera review. Although this rule denies Ritchie the benefits of an "advocate's eye," we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file (e.g., the *Page 19 medical report), he is free to request it directly from the court, and argue in favor of its materiality. Moreover, the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.
 To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child-abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse.
480 U.S. at 60 (emphasis added). Thus, Stiles' argument that he was entitled to participate, through counsel, during the in camera review lacks merit.
 {¶ 33} The record in this case reveals that the trial court properly conducted an in camera review of the children services' files. (July 10, 2007 Order, Doc. No. 42). Furthermore, the trial court did not abuse its discretion by releasing only those children services' records that "contain[ed] statements made by or attributed to defendant or contain information concerning defendant's previous criminal history." (Aug. 2, 2007 Order, Doc. No. 48). Under these circumstances, we cannot find that Stiles has suffered a manifest injustice.
 {¶ 34} Stiles' third assignment of error is, therefore, overruled.
ASSIGNMENT OF ERROR NO. IV
 THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT IN ALLOWING WITNESSES TO TESTIFY AS TO STATEMENT [SIC] OF THE MINOR *Page 20 CHILD, MATTHEW JORRIS AS TO THE SOURCE OF HIS INJURY IN SEPTEMBER OF 2006.
 {¶ 35} In his fourth assignment of error, Stiles argues that the trial court erred by allowing witnesses to testify concerning the source of Matthew's September 2006 injury. Specifically, Stiles argues that the witnesses' testimony was inadmissible hearsay and that its admission violated the Confrontation Clause to the Sixth Amendment. The State, on the other hand, argues that the witnesses did not testify regarding statements made by Matthew; but rather, testified that: they had conversations with Matthew about his injury; based on the type of injury and Matthew's demeanor, they had concerns about the cause of the injury. Under these circumstances, the State argues that their testimony was not hearsay and not contrary to the Confrontation Clause. We agree with the State.
 {¶ 36} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" This provision bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Davis v. Washington (2006), 547 U.S. 813, 821,126 S.Ct. 2266, 165 L.Ed.2d 224, quoting Crawford v. Washington (2004),541 U.S. 36, 53-54, 124 S.Ct.1354, 158 L.Ed.2d 177. However, "[s]tatements which are not hearsay are not implicated by the confrontation clause *Page 21 
because they are not testimonial in nature." State v. Waddell, 3d Dist. Nos. 9-04-30, 9-04-31, 9-04-31, 2005-Ohio-1426, ¶ 17, citingCrawford, 541 U.S. 36. See also, Tennessee v. Street (1985),471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425; State v. Selmon, 5th Dist. No. 05 CA 49, 2006-Ohio-65, ¶ 20; State v. Simuel, 8th Dist. No. 89022,2008-Ohio-913, ¶ 34; State v. Brown, 9th Dist. No. 04CA008510,2005-Ohio-2141, ¶ 9; State v. Banks, 10th Dist. No. 03AP-1286,2004-Ohio-6522, ¶ 18; State v. Aldrich, 12th Dist. No. CA2006-10-044,2008-Ohio-1362, ¶ 6. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C).
 {¶ 37} The testimony at issue in this case[1] was given by two women who watched Matthew and Mia, Laura Perez and Neisha Ulrey. (Mar. 4-7, 2008 Tr. Vol. III at 468, 488). Perez testified, in pertinent part, as follows:
 A: Well, after she started bringing Matthew back over to the house, this was after his surgery and after his cast was already on, I had asked Matthew what had happened to his leg. He stated to me, —
 MR. SABOL: Objection as to what Matthew said.
 THE COURT: Sustained.
 Q: Okay. You asked Matthew what happened to him?
 A: Uh-huh.
 Q: Based on what he told you — let me ask you, without telling us what he said, where did this occur? What were the circumstances of him talking to you? *Page 22 
 A: Where was he at when he told me?
 Q: Uh-huh.
 A: We were sitting in my living room.
 Q: Okay. Why were you asking him questions?
 A: Because I was concerned on how he had broken his leg because I know the femur bone is a hard bone to break.
 Q: All right. Then you decided to ask him how it happened?
 A: Uh-huh.
 Q: All right. Based on that conversation what did you do?
 A: After he said what he said to me I was concerned because — well, to me, it wasn't an accident and it wasn't self-inflicted and so I called Children Services.
(Mar. 4-7, 2008 Tr. Vol. III at 472-73). Ulrey testified, in pertinent part, as follows:
 Q: Okay. Did you ever have occasion to talk to Matthew about how he broke his leg?
 A: Yes, I did.
 Q: Now, you can't tell us what Matthew said; okay, Neisha? A: Uh-huh.
 Q: I want to advise you of that. Tell us about the time you went over to their house and Matthew had the broken leg. Just tell us about that specific visit.
 A: Okay. I got there because Kristin couldn't take the kids to the grocery store because Matthew was in this cast. So, I went so she could take a trip to Wal-Mart, to watch the kids. Well, so I watched the kids. While I was there I asked Matthew what happened to his leg. I asked him if it was an accident or if someone had hurt him. I asked him if Daniel was the one that hurt him. I asked him if it was the first time that Dan had hurt him. I asked if Dan had ever hurt Mia. I asked him what he had ever done to Mia and what else he had ever done to Matthew. I asked him if his mother was there the day of the accident and if she ever hurt him as well in an inappropriate way.
 Q: Okay. Now, when you were asking Matthew questions with regards to how he broke his leg describe his demeanor for us.
 A: He was very quiet, which is very, very uncommon for Matthew. He wouldn't look at me at first. He had his head down. He would only answer the question I asked. He wouldn't *Page 23 
go on. He just seemed very scared. It was just an emotion I never seen from him before.
 Q: Did he, in fact, answer your questions?
 A: Yes, he did.
 Q: Based upon what Matthew told you what did you do?
 A: I went home and told my mom that Daniel broke Matthew's leg.
 Mr. GRZYBOWSKI: Objection, your Honor, as to what she said to her mother. Relevance.
 THE COURT: Overruled.
 Q: Continue.
 A: And we talked about it for a little bit. I called some Children Service agencies — not Allen County — but, some people that I knew that knew Children Service agencies. Then I ended up making an anonymous call to Children Services.
 Q: So, whatever it was that Matthew told you, you were concerned enough to discuss it with your mother and to call the Allen County Children Services; is that correct?
 A: Yes.
(Mar. 4-7, 2008 Tr. Vol. III at 494-95).
 {¶ 38} As initial matters, this Court notes that Stiles' characterization of the evidence presented is factually inaccurate. In his brief to this Court, Stiles alleges that the inadmissible evidence "* * * came from one of Matthew's babysitters indicating that Matthew stated that Stiles caused his broken hip injury as a result of abuse." (Appellant's Brief at 30). The testimony presented, in fact, does not reflect what Matthew stated to either of the babysitters; but instead, relays the babysitters' impressions and reactions to the conversation, including that they both contacted Children Services thereafter. Additionally, Stiles appears to indicate in his brief that the babysitters' testimony is not hearsay but should be excluded underWashington v. Crawford anyway. For example, Stiles states that: *Page 24 
 * * * the testimony danced around the issue of hearsay * * * the government attempts an end run around the hearsay rule and Crawford by allowing witnesses to come right up to and the precipice of the full hearsay statement, in front of the jury, having the counsel for the government admonish the witness in front of the jury, stating, in effect, don't try to give us a quotation from Matthew, but, let the jury know that he told you that Daniel Stiles broke his hip. Such a practice is the functional equivalent of having the witness make a hearsay statement to the jury.
(Appellant's Brief at 30, 35). We reject Stiles' proposed "functional equivalent" hearsay test; whether a statement is hearsay is determined by Evid. R. 801(C). We also reject Stiles' argument that "functionally equivalent" hearsay violates the Confrontation Clause; to the contrary, if the statement is not hearsay, then its admission does not violate the Confrontation Clause or Crawford. Waddell, 2005-Ohio-1426, at ¶ 17, citing Crawford, 541 U.S. 36. See also, Tennessee, 471 U.S. at 414;Selmon, 2006-Ohio-65, at ¶ 20; Simuel, 2008-Ohio-913, at ¶ 34;Brown, 2005-Ohio-2141, at ¶ 9; Banks, 2004-Ohio-6522, at ¶ 18;Aldrich, 2008-Ohio-1362, at ¶ 6.
 {¶ 39} We also are not persuaded that Stiles' hearsay argument, at least with respect to Ulrey's testimony, is properly before this Court. Defense counsel objected to Ulrey's testimony about her actions after her conversation with Matthew as follows: "Objection, Your Honor, as to what she said to her mother. Relevance." (Mar. 4-7, 2008 Tr. Vol. III at 495). In State v. Laffin, this Court stated:
 An objection to the introduction of evidence should point out the particular grounds of objection. If there is more than one *Page 25 ground of objection, all should be specified, since those not specified cannot be relied upon. Thus, if the evidence is objected to only on the ground of immateriality, all other grounds are waived.
(Sept. 16, 1980), 3d Dist. No. 2-80-12, at *2. Viewing counsel's objection, we are not persuaded that a hearsay objection was raised, but rather, a relevance objection. If counsel wished to raise both a hearsay and relevance objection, he should have specifically stated so on the record. Accordingly, any objection to Ulrey's testimony on the basis of hearsay is waived. Laffin, 3d Dist. No. 2-80-12, at *2.
 {¶ 40} Stiles' fourth assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. V THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT IN ALLOWING THE STATE OF OHIO TO INTRODUCE PHOTOGRAPHS OF MIA JORRIS TAKEN BY A LAY WITNESS WITHOUT DISCLOSING THE SAME TO THE DEFENDANT IN PRE TRIAL DISCOVERY.
 {¶ 41} In his fifth assignment of error, Stiles argues that the trial court erred when it permitted photographs of Mia Jorris to be entered into evidence when the State failed to provide discovery of those photographs. The State, on the other hand, argues that the record, at best, shows confusion over whether the photographs were submitted to Stiles during discovery. The State alleges that initially defense counsel objected to the photographs but, after defense counsel was given time to review the photographs during a recess, defense counsel then *Page 26 
indicated that he had no objection to proceeding and made no objection to the photographs thereafter. Under these circumstances, the State argues that there was no error in the trial court's decision to allow the photographs because Stiles failed to object. We agree with the State that the photographs' admission was not in error.
 {¶ 42} "The failure to object to evidence at trial constitutes a waiver of any challenge on appeal, except for plain error." State v.Walker, 3d Dist No. 13-05-10, 2006-Ohio-6488, ¶ 39, citing State v.Hairston (Oct. 18, 2001), 10th Dist. No. 01AP-299, at *3, citingState v. Robertson (1993), 90 Ohio App.3d 715, 728. We recognize plain error "`with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., citingState v. Landrum, 53 Ohio St.3d at 111, quoting Long, 53 Ohio St.2d 91, paragraph three of the syllabus. To demonstrate plain error, the appellant must show that the outcome of his trial would clearly have been different but for the errors alleged. State v. Waddell (1996),75 Ohio St.3d 163, 166, 661 N.E.2d 1043, citing State v. Moreland (1990),50 Ohio St.3d 58, 63, 552 N.E.2d 894.
 {¶ 43} Crim. R. 16 provides the discovery rules for criminal proceedings. State v. Engle, 166 Ohio App.3d 262, 2006-Ohio-1884,850 N.E.2d 123, ¶ 7. Crim. R. 16(E)(3) provides:
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the *Page 27 court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.
Engle, 2006-Ohio-1884, at ¶ 7, citing Crim. R. 16(E)(3).
 {¶ 44} The prosecution's violation of Crim. R. 16 is reversible error, "only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." State v. Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981,836 N.E.2d 1173, ¶ 131, citing State v. Parson (1983), 6 Ohio St.3d 442,445, 453 N.E.2d 689.
 {¶ 45} The trial court's decision regarding a Crim. R. 16 discovery sanction is reviewed under an abuse of discretion standard. State v.Gibson, 3d Dist. No. 1-06-74, 2007-Ohio-3345, ¶ 12. An abuse of discretion implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "[I]n determining the appropriate sanction, the trial court must make an inquiry into the circumstances of the discovery violation." Engle, 2006-Ohio-1884, at ¶ 8, citingLakewood v. Papadelis (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus. Further, "the trial court `must impose the least severe sanction that is consistent with the purpose of the rules of discovery.'" Id., citing Papedelis, 32 Ohio St.3d at paragraph two of the syllabus. *Page 28 
 {¶ 46} The photographs at issue were presented by the State and indentified by Cindy Martin, the nursery coordinator at Lima Community Church. (Mar. 4-7, 2008 Tr. Vol. III at 507-09). Martin testified that, on December 31, 2006, Pamela Stiles brought Mia and Matthew to the nursery for the first time. (Id. at 508-09). Martin testified that she immediately noticed several bruises on Mia's face and an abrasion on Mia's nose. (Id. at 509). At this point, the State approached Martin with six photographs for identification, defense counsel asked to review the photographs, and a brief discussion was had at the bench between the court and opposing parties. (Id. at 509-10); (State's Exs. 36-41). The jury was then excused and the following discussion occurred at the bench:
 THE COURT: Okay. The record should reflect that the jury has left the Courtroom. I gather there's a discussion about whether the defense has been provided discovery of the exhibits that were just referred to. Is that what we have here-the concern? Mr. Grzybowski?
 MR. GRZYBOWSKI: Yes, your Honor. The photographs that were just marked, I have not seen them before.
 MR. WALDICK: Your Honor, we would indicate for the record that we don't have our discovery file here. We didn't bring it to trial because it is fairly voluminous. However, it is my recollection that this was part of the discs given. These are all digital pictures, Judge. There was a disc given that —
 THE COURT: How quickly can you get your discovery file so you can confirm whether or not that was provided?
 MR. WALDICK: Fairly quickly. Ten minutes.
 THE COURT: And the discovery, again, was given to counsel?
 There wasn't a copy filed with the Court; was there?
 MR. WALDICK: No, your Honor, because we wanted to avoid a change of venue.
 THE COURT: Okay. All right. Well, why don't you either run down and get that or send one of your assistants down to get that *Page 29 
 so we can get everything on the record here? We'll stand in recess. Let me know when you've got that. (Whereupon, the Court was in recess.)
 THE COURT: The record should reflect we're back on record in CR2007 0120, State of Ohio-vs-Daniel Stiles. The defendant is present with counsel. The State is present. The jurors are still out of the Courtroom. The record should reflect that we broke for a further recess. Well, I guess we were gone probably fifteen/twenty minutes after we had the question about the exhibits that had just been marked and were about to be shown to the witness, Ms. Martin. There was a concern because, Mr. Grzybowksi, you had indicated that you had not received those in discovery. The State indicated that they believed that they were provided in discovery. I had sent both parties out and got the respective disc that the photos were on. So I think we're still at that point. Then what we've done is now, Mr. Grzybowksi and Mr. Sabol, you've been given, what, the last five/ten minutes to review those photographs; is that correct?
 MR. SABOL: That is correct, your Honor.
 THE COURT: Okay. What's the position of the defense now with respect to proceeding with these photographs? Do you have a position that you want to take?
 MR. GRZYBOWSKI: Your Honor, it's my understanding that those photographs, which have been marked as State's exhibits `37' through — * * * `36' to `41'? Okay. `36' to `41' represent December 31st of 2007-2006, I'm sorry. With that understanding that they represent that particular time frame we have a doctor who is going to be coming in regarding that incident and a referral from Children Services and so we'll deal with those photographs at that particular time. We've had ample opportunity at this time to review them and we've decided on that course of action.
 THE COURT: Okay. So, you're prepared and okay with proceeding now with this witness?
 MR. GRZYBOWSKI: We are prepared and willing to proceed.
(Mar. 4-7, 2008 Tr. Vol. III at 511-14) (Emphasis added).
 {¶ 47} Based on this dialogue, we are persuaded that any objection Stiles had to using the photographs was rescinded; and therefore, we must review under *Page 30 
plain error. Walker, 2006-Ohio-6488, at ¶ 39, citing Hairston, 10th Dist. No. 01AP-299, at *3, citing Robertson, 90 Ohio App.3d at 728. Stiles has failed to demonstrate plain error to this Court. In fact, defense counsel suggested that the photographs would be explained by one of their witnesses at trial, which negates any prejudice that might otherwise have resulted. Stiles has also failed to demonstrate both that the State failed to provide discovery of the photographs and that the State's failure, if at all, was willful. Jackson, 2005-Ohio-5981, at ¶ 131, citing Parson, 6 Ohio St.3d at 445. Furthermore, Stiles' suggestion that the proper sanction would have been the dismissal of count three and an additional sanction of prohibiting the government from using any evidence related to count three against him would have been excessive. Engle, 2008-Ohio-1884, at ¶ 8. Based on all the aforementioned, we find that the trial court did not abuse its discretion by admitting the photographs into evidence when Stiles rescinded his objection and agreed to proceed.
 {¶ 48} Stiles' fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. VI THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT BY IMPOSING CONSECUTIVE SENTENCES THAT RESULT IN THE FUNCTIONAL EQUIVALENT OF LIFE WITHOUT PAROLE WHICH IS RESERVED ONLY AS ONE OF THE POSSIBLE SENTENCES FOR AGGRAVATED MURDER. *Page 31 
 {¶ 49} In his sixth assignment of error, Stiles argues that given his current age and the length of sentence he was given (57 years), effectively he is to serve a life sentence. Stiles argues that this sentence violates the Eighth Amendment's prohibition against cruel and unusual punishments. The State argues that the trial court's sentence was within the statutory range for each count; and therefore, not grossly disproportionate or shocking to a reasonable person and not in violation of the Eighth Amendment. We agree with the State.
 {¶ 50} The Eighth Amendment to the U.S. Constitution provides: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." See, also, Article 9, Section I of the Ohio Constitution. The Eighth Amendment was historically raised "to protect individuals from inhumane punishment such as torture or other barbarous acts" but more recently has been used "to prohibit punishments that were found to be disproportionate to the crimes committed." State v. Weitbrecht (1999), 86 Ohio St.3d 368, 370,715 N.E.2d 167, citing Robinson v. California (1962), 370 U.S. 660, 676,82 S.Ct. 1417, 8 L.Ed.2d 758. However, "[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." Id. at 370-71, citing McDougle v. Maxwell
(1964), 1 Ohio St.2d 68, 70, 203 N.E.2d 334. Furthermore, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." Id., citing *Page 32 McDougle, 1 Ohio St.2d at 70. See, also, State v. Chaffin (1972),30 Ohio St.2d 13, 282 N.E.2d 46, paragraph three of the syllabus.
 {¶ 51} In State v. Hairston, the Ohio Supreme Court considered whether an aggregate prison term of 134 years violated the Eighth Amendment and Section 9, Article I of the Ohio Constitution. 118 Ohio St.3d 289,2008-Ohio-2338, 888 N.E.2d 1073, ¶ 1. The Court answered the inquiry in the negative, concluding:
 for purposes of the Eighth Amendment and Section 9, Article I of the Ohio Constitution, proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment.
Id. at ¶ 20. The Court further noted that "[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." Id. at ¶ 21, citing McDougle,1 Ohio St.2d at 69, citing Martin v. United States (C.A.9, 1963), 317 F.2d 753
(overruled on other grounds, United tates v. Bishop (1973),412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941); Pependrea . United States (C.A.9, 1960), 275 F.2d 325; and United States v. Rosenberg (C.A.2, 1952),195 F.2d 583.
 {¶ 52} The trial court sentenced Stiles to fifteen (15) years to life imprisonment on count one, murder in violation of R.C. 2903.02(B). (Mar. 10, 2008 JE, Doc. Nos. 140, 160). R.C. 2929.02(B)(1) provides: "[e]xcept as *Page 33 
otherwise provided in division (B)(2) or (3) of this section, whoever is convicted of or pleads guilty to murder in violation of section 2903.02
of the Revised Code shall be imprisoned for an indefinite term of fifteen years to life." Thus, the trial court's sentence on count one was as provided by statute for an R.C. 2903.02(B) murder. The trial court sentenced Stiles to eight (8) years on counts two, three, five, and six, felonious assaults, violations of R.C. 2903.11(A)(1) and second degree felonies. (Mar. 10, 2008 JE, Doc. Nos. 140, 160). R.C. 2929.14(A)(2) provides that "[f]or a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years." Thus, the trial court's sentence as to counts two, three, five, and six was within the range prescribed by statute for a second degree felony. Finally, the trial court sentenced Stiles to ten (10) years on count four, attempted murder in violation of R.C. 2923.02(A) and2903.02(B), a first degree felony. (Mar. 10, 2008 JE, Doc. Nos. 140, 160). R.C. 2929.14(A)(1) provides that "[f]or a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years." Thus, the trial court's sentence on count four was within the range prescribed by statute for a first degree felony. Since the trial court's sentence imposed for each count was within the terms authorized by the applicable statute, Stiles' sentence was not a cruel and unusual punishment in violation of the Eighth Amendment or Article 9, Section I of the Ohio Constitution. Hairston, 2008-Ohio-2338
at ¶ 21, citing McDougle, *Page 34 1 Ohio St.2d at 69, citing Martin, 317 F.2d 753 (overruled on other grounds,Bishop, 412 U.S. 346); Pependrea, 275 F.2d 325; Rosenberg, 195 F.2d 583.
 {¶ 53} Furthermore, the trial court's sentence in this case, whether viewed incrementally as to each count or in its aggregate, is not "shocking to a reasonable person" nor is the penalty "so greatly disproportionate to the offense as to shock the sense of justice of the community." Weitbrecht, 86 Ohio St.3d at 370, citing McDougle,1 Ohio St.2d at 70; Chaffin, 30 Ohio St.2d 13. Stiles was convicted of beating two-year-old Mia to death. Mia suffered from a broken clavicle, blunt force trauma to her abdomen causing lacerations and internal bleeding, a transected bowel, bruised lung, and three broken ribs. (State's Exs. 50, 52); (Mar. 4-7, 2008 Tr. Vol. II at 349, 352, 356, 358). The coroner's report also indicated that several of Mia's ribs were healing from prior fractures, which indicated that Mia was abused on more than one occasion. (Id.). Stiles was also convicted of felonious assault and attempted murder as to Mia's three-year-old brother, Matthew, breaking his leg on one occasion and damaging his colon to the extent that a portion of it was removed on another. (State's Exs. 32, 33, 53); (Mar. 4-7 Tr. Vol. III at 425, 429, 432). We are not persuaded that members of the community would feel that Stiles has suffered an injustice by being ordered to serve fifty-seven (57) years to life in prison for his crimes. Therefore, Stiles' prison sentence is not contrary to theEighth Amendment or Article 9, Section I of the Ohio Constitution. *Page 35 
 {¶ 54} Additionally, the PSI used in this case indicates that Stiles has previous convictions in Texas and Ohio for: reckless driving and no liability insurance, possession of marijuana, possession or delivery of a controlled substance, probation revocation, operator's license required, misdemeanor theft, and attempted possession of crack cocaine. Based on this prior record, we cannot say that the trial court's decision to sentence Stiles to consecutive maximum terms was an abuse of discretion or contrary to law.
 {¶ 55} Stiles' sixth assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. VII DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO COUNSEL DUE TOTHE INEFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL.
 {¶ 56} In his seventh and final assignment of error, Stiles argues that he was denied effective assistance of trial counsel. Specifically, Stiles argues that counsel was granted funds for an expert witness but never called that witness at trial, and trial counsel did not present mitigation evidence during the sentencing hearing nor seek a continuance in order to present mitigation evidence. The State argues that whether or not to call a witness at trial is trial strategy and not ineffective assistance. The State further argues that mitigation evidence was presented during the trial when Stiles' wife testified about his family problems and drug addiction. Finally, the State argues that counsel's decision to not present mitigating evidence might well have been a trial strategy or simply because no mitigating evidence *Page 36 
existed. We agree with the State that Stiles has failed to establish ineffective assistance of counsel.
 {¶ 57} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. State v. Kole (2001), 92 Ohio St.3d 303, 306,750 N.E.2d 148, citing Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. Strickland, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. State v.Bradley (1989), 42 Ohio St. 3d 136, 141-42, 538 N.E.2d 373, quotingState v. Lytle (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623.
 {¶ 58} Stiles argues that trial counsel was ineffective for failing to call an expert witness even though the trial court granted his motion for expenses. This *Page 37 
argument fails to establish ineffective assistance, however, because "[t]he decision whether to call a witness is `within the rubric of trial strategy and will not be second-guessed by a reviewing court.'"State v. McCullough, 3d Dist. No. 12-07-09, 2008-Ohio-3055, ¶ 35, citingIn re Walker (Dec. 12, 2005), 3d Dist. Nos. 5-05-22 5-05-23, ¶ 14, quoting State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396,794 N.E.2d 27, ¶ 125. Stiles has failed to show that trial counsel's decision was anything but strategy and only hypothesizes that the expert would have contested the timeline of the injuries and subsequent events. Stiles has also failed to demonstrate that he suffered prejudice on account of counsel's alleged ineffectiveness. Under these circumstances, we cannot find ineffective assistance of counsel.
 {¶ 59} Next, Stiles argues that trial counsel was ineffective for failing to present mitigation evidence at sentencing. This argument lacks merit as well because "the presentation of mitigating evidence is a matter of trial strategy." State v. Were, 118 Ohio St.3d 448,2008-Ohio-2762, 890 N.E.2d 263, ¶ 241, citing State v. Keith (1997),79 Ohio St.3d 514, 530, 684 N.E.2d 47. In addition, Stiles has failed to offer any indication of what, if any, mitigating evidence could have been presented that would have impacted his sentence. Furthermore, as the State argues, Stiles' wife, Melanie, testified concerning his struggle with drug addiction. (Mar. 4-7, 2008 Tr. Vol. IV at 593-95). The State also presented potentially mitigating evidence that: Stiles alleged that he bit Mia after she bit him to teach *Page 38 
her that she should not bite people; and evidence that Stiles struck Matthew to stop him from crying and to get him to lay down. (State's Ex. 51); (Mar. 4-7, 2008 Tr. Vol. IV at 567). The trial court reviewed a PSI as well, which indicated that Stiles had an extended history of drug and alcohol abuse, as well as marital problems. Under these circumstances, we cannot find that counsel's failure to provide mitigating evidence amounted to ineffective assistance of counsel.
 {¶ 60} Stiles' seventh assignment of error is, therefore, overruled.
 {¶ 61} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 WILLAMOWSKI, J., concurs.
 ROGERS, J., concurs, concurs in Judgment Only in Assignment of ErrorNo. II and No. IV.
[1] Since Stiles failed to indicate which witnesses provided hearsay testimony, other than to say "one of Matthew's babysitters," we presume that Stiles' assignment of error is limited to the testimony of the two babysitters, Perez and Ulrey. *Page 1