[Cite as *State v. Croce*, 2014-Ohio-1627.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100244

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## PAUL CROCE

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573312

**BEFORE:**    Blackmon, J., Jones, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**    April 17, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Bldg., Suite 940
526 Superior Avenue
Cleveland, OH   44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Alison Foy
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, OH   44113

PATRICIA ANN BLACKMON, J.:

{¶1}  Appellant Paul Croce ("Croce") appeals from his convictions for aggravated burglary, kidnapping, rape, felonious assault, and aggravated robbery.  He assigns six errors for our review.[1]

{¶2}  Having reviewed the record and pertinent law, we affirm Croce's convictions.  The apposite facts follow.

## Facts

{¶3}  The Cuyahoga County Grand Jury indicted Croce for three counts of aggravated robbery, three counts of aggravated burglary, two counts of kidnapping, three counts of rape, and one count of felonious assault.  The offenses arose from Croce breaking into a 67-year old woman's house where he raped her vaginally, orally, and anally,  punched her, and stole money from her purse.  The crimes occurred in 2006, however, a DNA match was not found until 2008.  Although the police made attempts to contact the victim, it was not until 2013 that she responded to their attempts to locate her.  The following evidence was presented to the jury.

{¶4}  On the night of July 19, 2006, the victim was awakened by the sound of her bathroom window being opened.  She called out, "Who's there?"  A man responded, "Steve."  She went to her bedroom door and saw a man in shorts in the doorway.  The lights were off so she could not see clearly.  However, she described him to police as a white male, about six feet tall, with reddish brown hair, and a "gravelly voice."  She

---

[1]See appendix.

estimated he was 40 years old. She told the man to get out of her house. The man pushed her into the bedroom and onto her bed.

{¶5} He put a pillow over her face. When she told him she could not breathe, he put a blanket over her face. He put what felt like a knife against her neck and told her that if she screamed he would slit her throat. He then punched her so hard in her left cheek that she "saw stars." The man forced her to perform oral sex, raped her vaginally, and digitally penetrated her anus with his finger. When he was finished, he asked her if she had any money. She told him that she had two dollars in her purse. He took the two dollars and left.

{¶6} After he left, the victim went to the bathroom to use the toilet and noticed the screen to her window was cut open. She then called police. The responding officer testified that the victim was very upset and crying and had a swollen left face. The victim told him she did not know the assailant but provided him with the above description. The officer noticed the screen in the bathroom was cut.

{¶7} The victim was taken by EMS to Marymount Hospital. Nurse Michelle Schreiber stated that her notes indicated that the victim was upset and disheveled and had a black eye and bruises on her left arm and neck. Along with conducting a rape kit, Schreiber also collected "dry stain swabs" in the areas of the victim's breasts and neck because the victim had stated the assailant had licked her in those areas. A cat-scan revealed the victim had a fractured cheek bone.

{¶8} Forensic scientist David Niemeyer testified that no seminal fluid was collected from the victim, which would not be unusual if the assailant did not ejaculate.

However, the dry stain swabs had the DNA of both the victim and an unknown male. After comparing the DNA with Croce's, Niemeyer stated he could not be ruled out as a contributor. He added to find someone that would create this type of DNA profile with the victim's, he would have to test 202 quadrillion to 300 trillion unrelated people to get this profile just one time.

{¶9} Detective Keith Hunter testified that when Croce was arrested, he asked Croce if he knew the victim or if he dated any older women. Croce denied knowing the victim, but admitted to dating older women. He denied having sexual relations with the victim and could not explain how his DNA got on her.

{¶10} Croce testified in his own defense. He admitted he had prior convictions for safecracking, burglary, attempted breaking and entering, disorderly conduct, felonious assault, and driving while under suspension. He pled guilty to all of these crimes and served time in prison. He stated he was arrested outside his home in April 2013 for raping the victim. When his defense attorney showed him a photograph of the victim, he recalled he knew her.

{¶11} According to Croce, he became acquainted with the victim when he would walk past her house on his way to a neighborhood bar. She would be outside doing yard work. They would first only exchange greetings, but then after time, they would engage in conversation. He stated one night they sat in her backyard talking, and he kissed her.

{¶12} They proceeded to go inside her house where he kissed her neck and breasts. He stated once he saw she had a large red scar on her chest, he became "freaked out" and told her he did not feel well. He then told her he could not continue being

physical with her because he had a girlfriend. He stated the victim became angry and ordered him repeatedly to leave her house. He was in a hurry to get out of the house and did not tie his shoes. He claims he either tripped on his shoe strings or a rug and fell into the victim and they both hit the wall. He then walked home and never saw her again.

{¶13} He admitted that at the time he lived near the victim. He stated that from 2007-2009 he was in rehabilitation for a crack addiction; however, at the time he knew the victim, he claimed he was only an alcoholic.

{¶14} Based on the evidence, the jury found Croce guilty on all counts. The trial court merged the two aggravated burglary counts and the two aggravated robbery counts. The kidnapping counts were merged with one of the rape counts. Thus, Croce was sentenced for one count of aggravated burglary, one count of aggravated robbery, three counts of rape, and one count of felonious assault. The trial court sentenced Croce to a total of 28 years to life in prison. The trial court also classified Croce as a tier three sex offender.

## Sufficiency of the Evidence and Manifest Weight

{¶15} We will address Croce's first and second assigned errors together. Croce argues under both assigned errors that his physical interaction with the victim was consensual, that her face was injured when he tripped and pushed her into the wall, and that the fact there were no footprints under the bathroom window show that he did not climb through the bathroom window.

**{¶16}** Croce argues that his convictions are not supported by sufficient evidence. However, if the victim's version of events is believed, then there was sufficient evidence that Croce committed aggravated burglary by entering the home with the intent to commit rape, raped the victim three times, committed felonious assault by hitting her so hard he fractured her cheek bone, and committed aggravated robbery by taking money from the victim's purse.

**{¶17}** In determining whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 104, 651 N.E.2d 965 (1995). Based on the victim's version of events, there was sufficient evidence to support the convictions.

**{¶18}** What Croce is actually arguing is that his convictions were against the manifest weight of the evidence because he contends the victim's testimony was not credible given that it conflicted with his version of events.

**{¶19}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts

differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id.* at ¶ 25.

{¶20} There is no dispute that Croce's DNA was found on the victim's body. Croce originally told police he did not know the victim and had never been to her house and could not explain how his DNA got on the victim's body. However, at trial, he changed his story and stated that he did know the victim and that he had engaged in physical conduct with her. He claims he did not realize who the victim was until he was shown a photograph of her.

{¶21} It was within the jury's discretion to weigh Croce's testimony against the victim's. Given the testimony of the nurse and the responding officer that the victim was extremely upset after the event, and the fact there was a bruise on her neck where the victim stated a sharp instrument was pushed against her throat, we cannot say the jury lost its way in resolving the conflicting evidence. Moreover, if the victim and Croce did know each other, and she was trying to frame Croce because he spurned her advances, it is likely that she would have told the officers that he was the man she frequently saw walking to the neighborhood bar, instead of merely providing a vague physical description of him.

**{¶22}** Croce also argues that because there were no footprints under the window where the assailant allegedly entered the home, shows the victim was lying. However, the photographs show that the area under the window is grass. Therefore, the fact that there were no footprints does not show that the victim was lying because footprints are not normally left on grassy areas. Accordingly, Croce's first and second assigned errors are overruled.

### Jury Instruction and Ineffective Assistance of Counsel

**{¶23}** Croce's third and fourth assigned errors will be addressed together. Croce argues the trial court committed error in failing to give a limiting instruction to the jury that it could only consider Croce's prior convictions in relation to his credibility. Alternatively, Croce argues that counsel was ineffective for failing to request a limiting instruction regarding his prior convictions.

**{¶24}** The Supreme Court of Ohio has previously expressed its reluctance to impose a duty on the trial court to sua sponte issue a limiting instruction in response to the admission of other acts evidence. In *State v. Schaim*, 65 Ohio St.3d 51, 61, 600 N.E.2d 661 (1992), fn. 9, the court explained:

> The defendant * * * claims that it was plain error for the trial court to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney. We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested.

{¶25} Here, defense counsel failed to request such a limiting instruction. Therefore, the trial court did not err by failing to instruct the jury.

{¶26} Croce also argues counsel was ineffective for failing to request such an instruction. To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

{¶27} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.* at 694.

{¶28} As the Supreme Court in *Schaim* acknowledged, the decision whether to request such an instruction is tactical. Therefore, counsel's failure to request the instruction could have been tactical. Moreover, even if counsel should have requested the instruction, Croce has failed to demonstrate that but for this error, the outcome of trial would have been different. When he was arrested Croce denied knowing the victim; at trial, he testified he knew the victim and had physical contact with her in an attempt to explain how his DNA got on the victim. The victim, the nurse, and the responding officer, all testified to the victim's mental state; she was upset and crying. Also, if the

victim was framing Croce for spurning her advances, surely she would have told the officers who her assailant was. She could not even identify Croce as her attacker from the photo array.

{¶29} Moreover, the record shows the trial court did give a general instruction regarding judging the credibility of witnesses. In *State v. Cobbins*, 8th Dist. Cuyahoga No. 82510, 2004-Ohio-3736, this court held that counsel's failure to request a limiting instruction, when the court gave a general instruction on credibility, does not constitute ineffective assistance of counsel. Accordingly, we conclude no prejudice resulted. Croce's third and fourth assigned errors are overruled.

### Consecutive Sentences

{¶30} In his fifth assigned error, Croce argues the trial court erred by sentencing him to consecutive sentences without making the required findings.

{¶31} R.C. 2953.08(G)(2), governing appellate review of felony sentencing, provides as follows:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section

2929.14, or division (I) of section 2929.20 of the Revised Code, whichever,

if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶32}** Thus, under R.C. 2953.08(G)(2), the following two grounds permit an appellate court to reverse a trial court's imposition of consecutive sentences upon an offender: (1) the sentence is "otherwise contrary to law"; or (2) the appellate court, upon its review, clearly and convincingly finds that "the record does not support the sentencing court's findings." *See also State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 11.

**{¶33}** Under R.C. 2929.14(C)(4), when imposing consecutive sentences, the trial court must first find that the sentence is "necessary to protect the public from future crime or to punish the offender." The trial court must also find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Further, the trial court must find that one of the following factors applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶34}** In the instant case, the court complied with the findings required by the statute. After considering seriousness and recidivism factors, the court stated as follows:

> I find that consecutive sentences are necessary to protect [the public] and punish you and not disproportionate, and I'm going to find that the harm was so great or unusual that a single term does not adequately reflect the seriousness of your conduct and that your criminal history shows that consecutive terms are needed to protect the public. * * *
>
> I think these sentences are appropriate, they're not disproportionate to any sentence this Court would impose for similar offenders by similar conduct, I think that the harm that was caused to [the victim] accurately reflects the sentence is appropriate.

Tr. at 774-775.

**{¶35}** Accordingly, because the trial court made the required findings under R.C. 2929.14(C), it did not err by sentencing Croce to consecutive sentences. Croce's fifth assigned error is overruled.

## Costs

**{¶36}** In his sixth assigned error, Croce argues the trial court erred in imposing costs because it failed to advise him of the consequences if he failed to pay court costs. The state concedes the error; however, our review of current case law indicates that it has no merit.

**{¶37}** We agree that the trial court failed to advise Croce of the consequences if he should fail to pay the costs. Although R.C. 2947.23(A)(1)(a) formerly required the advisement to apply to all criminal cases, it was modified, effective March 22, 2013, to apply only where "the judge or magistrate imposes a community control sanction or other nonresidential sanction[.]" Croce was sentenced on July 23, 2013 and was sentenced to 28 years in prison. Therefore, the advisement was not mandatory. Accordingly, Croce's sixth assigned error is overruled.

**{¶38}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., P.J., and
KENNETH A. ROCCO, J., CONCUR

## APPENDIX

**Assignments of Error**

I.   The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction.

II.   Appellant's convictions are against the manifest weight of the evidence.

III.   The trial court denied appellant's right to a fair trial erred by not giving a jury instruction explaining how appellant's prior convictions could only be used to weigh his credibility.

IV.   Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments.

V.   The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14.

VI.   The trial court erred by ordering appellant to pay costs.