[Cite as *State v. McCutchen*, 2023-Ohio-368.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                                     No. 111406

    v.                           :

DEONTE MCCUTCHEN, SR.,                   :

    Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 9, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-640680-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Paul, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, L.L.C., Megan M. Patituce, and Joseph C. Patituce, *for appellant.*

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant Deonte McCutchen, Sr. ("McCutchen") appeals his convictions on multiple criminal counts. We affirm the trial court's judgment.

## I. Background and Facts

{¶ 2} On March 18, 2022, McCutchen was convicted of the following charges arising from a 12-count indictment returned on August 7, 2019, involving two victims, Doe 1 (d.o.b. 2008) and older sibling Doe 2 (d.o.b. 2006):[1]

Count 1: Rape, a first-degree felony, pursuant to R.C. 2907.02(A)(1)(b);

Count 2: Rape, a first-degree felony, pursuant to R.C. 2907.02(A)(1)(b);

Count 3: Gross sexual imposition, a third-degree felony, pursuant to R.C. 2907.05(A)(4);

Count 5: Gross sexual imposition, a third-degree felony, pursuant to R.C. 2907.05(A)(4);

Count 6: Kidnapping, a first-degree felony, pursuant to R.C. 2905.01(A)(4);

Count 7: Endangering children, a second-degree felony, pursuant to R.C. 2919.22(B)(1);

Count 8: Gross sexual imposition, a third-degree felony, pursuant to R.C. 2907.05(A)(4);

Count 9: Gross sexual imposition, a third-degree felony, pursuant to R.C. 2907.05(A)(4);

Count 10: Kidnapping, a first-degree felony, pursuant to R.C. 2905.01(A)(4); and

Count 11: Endangering children, a second-degree felony, in violation of R.C. 2919.22(B)(1).

---

[1] The original Count 3 rape, a first-degree felony under R.C. 2907.02(A)(1)(b), was dismissed by the state during trial and the counts were renumbered. McCutchen was found not guilty of Count 4: gross sexual imposition, a third-degree felony, pursuant to R.C. 2907.05(A)(4).

{¶ 3} Counts 1 through 7 involved victim Doe 1 listed as under the age of 13 for Counts 1 through 6 and under the age of 18 for Count 7. The remaining counts involved victim Doe 2 listed as under the age of 13 for Counts 8, 9, and 10 and under the age of 18 for renumbered Count 11. Sexually violent predator specifications under R.C. 2941.148(A) and sexual motivation specifications under R.C. 2941.147(A) attached to the rape and gross sexual imposition ("GSI") counts. At McCutchen's request, the sexually violent predator specifications were bifurcated to be heard by the trial court.

{¶ 4} Trial began on March 15, 2022. Prior to empaneling the jury for trial, the state moved to limit the testimony of Doe 1 regarding a prior accusation by Doe 1 against an eleven-year-old male cousin that was allegedly like that made against McCutchen. The Cuyahoga County Division of Children and Family Services ("CCDCFS") found the allegations were unsubstantiated. The trial court granted the motion on the ground that the testimony was barred by the rape-shield law codified at R.C. 2907.02(D).

{¶ 5} There was no medical evidence in the case. Testimonial evidence at the April 2021 trial was provided by the victims, the victims' mother ("Mother"), the Cleveland Police Department ("CPD") detective that interviewed Mother and the girls in December 2018, several months after the incident, and two trauma therapists from the Rape Crisis Center. McCutchen testified in his defense.

{¶ 6} Mother testified that she and McCutchen had known each other since middle school. They began dating in 2016 and McCutchen moved in shortly

thereafter with Mother and her three daughters, Doe 1, Doe 2, and a younger daughter. Mother worked 60 hours per week and McCutchen was at home with the children during Mother's absence. Mother and the daughters had a good relationship with McCutchen.

{¶ 7} The charges arose from allegations that McCutchen engaged in sexual activity with Doe 1 and Doe 2 during the period of November 1, 2017, to July 13, 2018. In July 2018, McCutchen was seriously injured in a motorcycle incident that resulted in hospitalization and was eventually released to his mother's home for rehabilitation. On September 25, 2018, Doe 1 and subsequently Doe 2 told Mother about the sexual assaults. Mother confronted McCutchen at his mother's home where McCutchen denied the claims, but also apologized.

{¶ 8} Doe 2 testified that she was 15 years of age at the time of trial. Doe 2 had a good relationship with McCutchen who she thought was "funny" and "cool." (Tr. 314.) After school, Doe 2 and her sisters would watch television with McCutchen in Mother's room while Mother was at work. Mother's room had the largest television and a PlayStation game console attached. The bed took up most of the room.

{¶ 9} McCutchen and the girls were watching a movie, Doe 2 and her sisters were sitting on the floor, and McCutchen was laying on the bed. Doe 2 asked whether she could play with McCutchen's phone. McCutchen responded that she could if she sat on the bed and Doe 2 agreed. McCutchen told the younger girls to

leave and locked the door. McCutchen was wearing boxer shorts, but Doe 2 could not remember whether he was wearing a shirt.

{¶ 10} Doe 2 was clothed in shorts and a shirt. McCutchen "spooned" her by laying behind her and pressing his lower area against her and began touching her buttocks.[2] (Tr. 320, 322.) Doe 2 stated she was shocked but did not tell Mother because Mother "looked happy and I did not want to ruin anything because at the time he was buying us Christmas gifts and birthday gifts and a lot." (Tr. 321.)

{¶ 11} The sisters were not in the room when the next incident occurred. Doe 2 was dressed in shorts and a shirt. McCutchen spooned Doe 2 and touched her private part through her clothing. Doe 2 did not recall what happened that lead to the touching. Doe 2 confessed the encounters to Mother in the presence of her two sisters after Doe 1 informed Mother of her encounters with McCutchen. Doe 2 also told the CPD detective and the therapist.

{¶ 12} Doe 1 was 13 years of age at the time of trial. Doe 1 testified that during the relevant time period, the three siblings slept in the living room. (Tr. 294.) Doe 1 was excited when McCutchen moved in. "I liked how he was loving to us, he used to take care of us, cook dinner for all of us, and just caring and kind." (Tr. 285.)

{¶ 13} Doe 1 testified that McCutchen used to "spoon with me, touch on me, and physically put his mouth" on her private part. (Tr. 286.) Doe also testified that on another occasion, she entered Mother's room where McCutchen was playing on

---

[2] A spooning position means "to nestle close together while lying down with one person facing the back of another." https://www.merriam-webster.com/dictionary/spoon (accessed Feb. 2, 2023).

the PlayStation and asked to play with McCutchen's phone. McCutchen began to spoon with her while she was laying on the bed playing with the phone, and digitally penetrated her. Doe 1 said similar incidents occurred "five times." (Tr. 293.)

{¶ 14} Doe 1 also said she was in the living room playing with a phone late one night while everyone was sleeping when McCutchen removed her underwear and performed oral sex. Doe 1 did not say anything out of fear that Mother would wake up and take McCutchen's side in the matter because that is what Doe 1 had seen on television. Doe 1 did not state where her sisters were at the time. Doe 1 recited an additional incident when only Mother, McCutchen, and Doe 1 were in Mother's room watching a movie. Mother was sitting in a chair in front of the bed. McCutchen was laying on his stomach while holding Mother's hand with his right hand and "reached his arm over" and "started touching me [with his left hand]." (Tr. 303-304.)

{¶ 15} Doe 1 explained that one evening after McCutchen moved out, she was watching a movie with Mother and her siblings when a commercial came on that triggered a comment by Doe 2 about female personal grooming. Doe 1 decided to text Mother that McCutchen had been touching her. Doe 1 and Mother talked in the living room and Mother headed to McCutchen's mother's house to confront him.

{¶ 16} Doe 1 was cross-examined about the accuracy of her statement to police that McCutchen performed oral sex on her every day. (Tr. 304.)

Counsel: So what does that mean when you say he kept doing it every day?

Witness:  Like he would do it like — say, if it's one day he would start touching on me, then probably two days later he would start touching on me again.

Counsel:  And as far — you said — the part that you said was every day. He licked your private part every day?

Witness:  Yes. No.  No.  * * * No, he did not. He probably — I think he did it once or twice.

Counsel:  So the whole time you knew him, you said he did it once or twice, but you told the detective he did it every day?

Witness:  Because I guess in my nine-year-old mind — he probably did or did not.

(Tr. 304-305.)

{¶ 17}  Clinical manager and trauma therapist Sheri Stevens ("Stevens") of the Cleveland Rape Crisis Center testified that she first met with Doe 2 in 2018 due to Doe 2 having experienced a sexual assault.  Services were completed in December 2021.  Stevens diagnosed Doe 2 with post-traumatic stress disorder ("PTSD"). Stevens also testified that Doe 2 could not describe her experiences in detail, which Stevens said was not uncommon in these types of cases.

{¶ 18}  Trauma Therapist Amanda Petric ("Petric"), also with the Cleveland Rape Crisis Center, testified that she believed she first connected with Doe 1 in November 2018 and several times subsequently to assist Doe 1 with achieving a greater sense of safety due to high stress symptoms. Doe 1 "was able to disclose information related to what happened to her."  (Tr. 350.)

{¶ 19}  Doe 1 did not identify the alleged perpetrator by name but "stated it was a boyfriend that mom met at a coffee shop."  (Tr. 354.)  Doe 1 disclosed "that

she was touched on her butt by the perpetrator when she asked to see their phone. She disclosed that the perpetrator had placed his mouth on her genitals." (Tr. 351.) "She also disclosed that she overheard [Doe 2] experiencing something behind a closed door." *Id.* Doe 1 was assigned to another therapist after several sessions and Petric did not reengage until late 2021. Doe 1 was also diagnosed with PTSD.

{¶ 20} CPD Detective Richard Durst ("Det. Durst") of the sex crimes and child abuse unit was assigned to the case on September 28 or 29, 2018. Det. Durst talked with Mother approximately twice who informed him that the victims were working with the Cleveland Rape Crisis Center but Det. Durst and the abuse advocate encountered scheduling issues.

{¶ 21} Det. Durst first interviewed Mother and the victims separately on December 4, 2018, and secured a warrant for McCutchen's arrest. Det. Durst was aware of McCutchen's hospitalization and injuries but did not interview McCutchen prior to issuing the warrant. Det. Durst subsequently submitted the case to the county prosecutor's office and testified before the grand jury because McCutchen had not been picked up on the warrant. Indictments were filed July 16, 2019.

{¶ 22} McCutchen testified that he, Mother, and the daughters routinely stayed at each other's homes. In September 2018, still recovering from his accident, he slipped and fell while visiting Mother's home and decided to return to his mother's house. That evening, Mother arrived and told him of the allegations by Doe 1. McCutchen denied the claims and opined that the victims resented that he made them perform household chores. "I cannot figure it out. Honestly. But I did

not do it." (Tr. 399.) He stated that Mother would allow Doe 2 to use Mother's cell phone though Doe 2 refused to perform chores. McCutchen would allow Doe 1 to use his phone because Doe 1 willingly performed the chores and that did not sit well with Doe 2.

{¶ 23} McCutchen confirmed that he, Mother, and the girls sometimes watched television together in Mother's room and that the living room was used as a bedroom for the three girls. McCutchen was upset that he was not contacted by Det. Durst or anyone from the CPD prior to his indictment. He learned of the warrant for his arrest in 2019 when his mother contacted him in Alabama after viewing the story on the news.

{¶ 24} During cross-examination, McCutchen admitted over objections to a prior conviction for misuse of a credit card and extended probation due to marijuana use during restrictions. He also admitted that he went to Alabama after he knew about the allegations and that was when Mother confronted him. Mother "just asked me did anything happen and I said no." (Tr. 420.)

{¶ 25} McCutchen's original and renewed Crim.R. 29 motions for judgment of acquittal were denied. The jury found McCutchen not guilty of the Count 4 GSI but guilty of all other charges. The trial court determined that McCutchen was not a sexually violent predator. McCutchen was sentenced to an aggregate sentence of 54 years to life in prison.

{¶ 26} McCutchen appeals.

## II.  Assigned Errors

{¶ 27} McCutchen assigns three errors:

I.  The trial court erred in failing to hold a hearing pursuant to *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), prior to excluding evidence of a prior unsubstantiated allegation of sexual abuse.

II.  Trial counsel provided ineffective assistance of counsel in failing to request a limiting instruction as to McCutchen's prior conviction.

III.  The cumulative effect of the errors in this case deprived McCutchen of his constitutionally guaranteed right to a fair trial.

## III.  Discussion

### A.  Evidentiary Hearing

{¶ 28} This court's review of the trial court's ruling on evidentiary matters such as a motion in limine is for an abuse of discretion. *Sokolovic v. Hamilton*, 195 Ohio App.3d 406, 2011-Ohio-4638, 960 N.E.2d 510, ¶ 13 (8th Dist.).  An "abuse of discretion" occurs where "a court exercise[s] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.  No court has discretionary authority to apply the law incorrectly, which is why courts apply a de novo standard when reviewing issues of law. *Id.* at ¶ 38, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 30, *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 26 (2d Dist.).

{¶ 29} McCutchen argues that the trial court should have conducted an in camera hearing before granting the state's motion to limit testimony that Doe 1 previously made a similar allegation of sexual abuse against an 11-year-old male cousin that CCDCFS found to be unsubstantiated. McCutchen cites *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992) and R.C. 2907.02(E) in support of his position.

{¶ 30} The rape-shield law, R.C. 2907.02(D), provides in applicable part, that

> [e]vidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶ 31} The purpose of the rape-shield law is

> "[f]irst, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process."

*Boggs,* 63 Ohio St.3d 418, 420, 588 N.E.2d 813 (1992)*,* quoting *State v. Gardner*, 59 Ohio St.2d 14, 17-18, 391 N.E.2d 337 (1979).

{¶ 32} R.C. 2907.02(E) provides:

> Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in

chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

{¶ 33} The "threshold determination * * * is whether an alleged victim in a sexual assault case can be cross-examined as to prior false accusations of rape" or whether the examination is prohibited by the rape shield law. *Boggs* at 421. If it is determined that cross-examination may be permitted, the inquiry becomes to what extent. *Id.*

{¶ 34} "[P]rior false accusations of rape do not constitute 'sexual activity' of the victim" under R.C. 2907.02. *Id.* at 423. Thus, "the rape shield law does not exclude such evidence." *Id.* However, "before cross-examination of a rape victim as to prior false rape accusations may proceed, the trial court shall hold an *in camera* hearing" to determine whether the evidence is barred by R.C. 2907.02(D). *Id.* at 424. If it is not barred by the rape shield statute, the trial court must consider whether the testimony "is totally unfounded and admissible for impeachment of the victim." *Id.*

{¶ 35} In January 2020, McCutchen issued a trial subpoena duces tecum to CCDCFS to provide records and testimony regarding the victims. The agency moved to quash the subpoena on the grounds of statutory confidentiality. The records are confidential under R.C. 5153.17, 2151.421 and other statutes, however, exceptions exist. "Where the records are necessary and relevant to a proceeding and good cause is shown for disclosure, 'access to the records may be warranted.'" *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 78, quoting *State v. Sahady*, 8th

Dist. Cuyahoga No. 83247, 2004-Ohio-3481, ¶ 32. *See also Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (due process rights of a criminal defendant, balanced against the confidentiality of a children's services record, entitled a defendant to an in camera records review to determine materiality). *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

{¶ 36} Ohio law requires an in camera examination of the agency records to determine whether: (1) the records are relevant and necessary to the pending action (2) whether the individual seeking disclosure has demonstrated good cause; and (3) whether admission of the records outweighs the statutory confidentiality considerations. *In re C.A.,* 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 80; *Sahady,* 8th Dist. Cuyahoga No. 83247, 2004-Ohio-3481, at ¶ 29; *Child Care Provider Certification Dept. v. Harris,* 8th Dist. Cuyahoga No. 82966, 2003-Ohio-6500, ¶ 11-13; *Johnson v. Johnson,* 134 Ohio App.3d 579, 585, 731 N.E.2d 1144.

{¶ 37} To determine good cause, the trial court considers "whether the due process rights of the accused are implicated" and "whether it is in the 'best interests' of the child." *Id.,* citing *Johnson* at 583, 1991 Ohio Atty.Gen.Ops. No. 91-003, 1991 Ohio Op. Atty. Gen. 16. The trial court must also consider whether the records are material to the defense or fair trial considerations are at stake. (Citations omitted.) *Id.*

{¶ 38} The defendant may not participate in the in camera review. *In re CA* at ¶ 82, citing *State v. Stiles,* 3d Dist. Allen No. 1-08-12, 2009-Ohio-89, ¶ 32. The defense "may have access to the information only if the trial court concludes that it

'probably would have changed the outcome of the trial.'" *Id.*, quoting *Ritchie*, 480 U.S. 39, 58, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

{¶ 39} On January 30, 2020, the trial court ordered the agency to produce the records for an in camera inspection that were filed under seal February 7, 2020. Multiple trial continuances were granted due to Covid. The parties stated during oral arguments that an in camera review of the records occurred at some point. A January 20, 2021 judgment entry documents that the parties were in possession of the agency records.

{¶ 40} After jury selection but prior to opening arguments, the state posed the oral motion in limine. The state argued that Doe 1's statement was barred by the rape-shield law and emphasized that allowing the defense to elicit testimony from Doe 1's therapist is the type of abuse the law was designed to protect. The defense countered that the information is not shielded and is admissible to show credibility. On appeal, the state argues that McCutchen was not entitled to a hearing because he failed to demonstrate that the accusations were totally false and unfounded pursuant to *Boggs*.

{¶ 41} The following discussion ensued:

> State: Your Honor, we had — both counsel and I have reviewed [CCD]CFS records in this case separately, Your Honor. I had provided [defense counsel with] therapy notes for Jane Doe 1. Contained in both the [CCD]CFS records and the therapy records for Jane Doe 1 was information she had shared with her therapist related to another innocent [sic] involving inappropriate touching by an 11-year-old cousin * * *.

Your Honor, we don't intend to introduce the records to the jury. We do intend to elicit testimony from the therapist. Your Honor, it's our position that through either Jane Doe 1, when she testifies, or the therapist, that information that she relayed to her therapist is protected by rape shield and should not be questioned on by either party, Your Honor. Thank you. * * *

Defense: Your Honor, obviously if that was allowed, it would go to her credibility. [Jane Doe 1] made allegations similar to the allegations made herein. The allegations were unsubstantiated by [CCD]CFS is my understanding. No further action was pursued in these allegations against this cousin. So we would oppose the motion in limine.

Court: As to the unsubstantiated issue, do you want to say anything from the State?

State: Yes, Your Honor. I believe it's — even though it's unsubstantiated, unsubstantiated per the [CCD]CFS has no bearing on the issue. It could be many reasons why it's unsubstantiated. Her divulging information in a private setting to her therapist about another potential encounter is the very reason that we have rape shield in the first place. It makes victims feel that they can open up about things that they would be less likely to do if it was presented to them on the stand or their therapist at trial. Thank you, Your Honor. * * *

Defense: Rape shield mostly deals with the sexual activity of the alleged victim. That's not what this was about. This was about the allegation. The allegation of a cousin, very similar in nature to the allegation against Mr. McCutchen. It was unsubstantiated. There were no charges that were filed. But it's about her allegations and it goes to her credibility, Your Honor.

(Tr. 209-211.)

{¶ 42} The trial court granted the motion in limine.

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless

it involves the evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the offender. And only to the extent the Court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

(Tr. 211, quoting R.C. 2907.02(D).)

{¶ 43} Ohio law provides that a rape victim may be cross-examined regarding prior false allegations at the trial court's discretion "if the defendant shows the allegations were clearly false and no sexual activity took place." *State v. Walker*, 8th Dist. Cuyahoga Nos. 79586 and 79695, 2002-Ohio-3265, ¶ 66, citing *Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813. "If sexual activity, consensual or not, took place, the rape shield law would prohibit cross-examination on that issue." *Id.* "The defense is not entitled to question the victim about other sexual allegations unless they are proven untrue." *Id.* at ¶ 67.

{¶ 44} "It is within the sound discretion of the trial court, pursuant to Evid.R. 608(B), whether to allow such cross-examination." *Boggs* at 424. Evid.R. 608(B) provides, in part, that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or support his credibility, * * * may not be proved by extrinsic evidence." *Boggs* at 421. "[I]f clearly probative of truthfulness or untruthfulness" in the discretion of the trial court, the instances may "be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness." *Id.*, quoting Evid.R. 608(B).

{¶ 45} According to the record, the trial court conducted an in camera review of the CCDCFS records and the parties were allowed, after that review, access to the

records. The trial court inquired about the issue of substantiation of the allegations during the motion in limine discussion. The defense stated the allegations were unsubstantiated by the agency and no actions were taken regarding the cousin. The state countered that the term unsubstantiated did not necessarily mean it was false. There was no other evidence introduced regarding the truth or falsity of the alleged statement.

{¶ 46} Based on the foregoing in camera exchange, "the trial court was therefore vested with discretion in determining whether to permit defense counsel to proceed with cross-examination." *State v. Ferrell*, 8th Dist. Cuyahoga No. 90277, 2008-Ohio-4241, ¶ 37. Like the trial court in *Ferrell*, this court finds no abuse of that discretion. *Id.,* citing *State v. Graber,* 2003-Ohio- 137, 95 N.E.3d 361 (5th Dist.) (trial court did not err in refusing to permit cross-examination where DHS investigation indicated that allegations were unsubstantiated but did not indicate that they were absolutely false); *State v. Black*, 85 Ohio App. 3d 771, 778, 621 N.E.2d 484 (1st Dist. 1993), citing *Boggs*, *supra*.

{¶ 47} Notably, *Boggs* emphasized that the defense bears the burden to demonstrate that the accusations were totally false and unfounded where the defense seeks to cross-examine on prior false accusations of rape. The defense must show that the accusations were made by the victim and that the accusations were "actually false or fabricated." *Id*. at 423. "Only if it is determined that the prior accusations were false because no sexual activity took place would the rape shield law not bar further cross-examination." *Id*. It is wholly within the trial court's sound

discretion under Evid.R. 608(B) whether to allow the cross-examination. *Id.* The trial court must "weigh the probative value of any relevant evidence against the danger of unfair prejudice." *Boggs*, 63 Ohio St.3d 418, 423, 588 N.E.2d 813, Evid.R. 403(A).

{¶ 48} Based on this court's review of the record, we cannot say that the trial court abused its discretion in this case. The first assigned error lacks merit and is overruled.

## B. Ineffective Assistance

{¶ 49} To substantiate a claim of ineffective assistance of counsel, McCutchen must show that counsel's performance was so deficient that he was prejudiced and denied a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). McCutchen must also show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 55 (8th Dist.), citing *id.*

{¶ 50} "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 671. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" as well as "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

{¶ 51} In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). McCutchen

must overcome the presumption that, under the circumstances, the challenged action "'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). We also consider whether the actions by counsel were "outside the wide range" of behaviors demonstrating "professionally competent assistance." *Strickland* at 690.

{¶ 52} McCutchen argues that trial counsel was ineffective due to failure to request a limiting instruction regarding McCutchen's prior conviction testimony. McCutchen asserts the jury should have been instructed that the prior conviction evidence should only be considered in regard to assessing credibility and not as character evidence. Evid.R. 404 "prohibits the use of evidence of an accused's character to show that he acted in conformity therewith." *State v. Williams*, 8th Dist. Cuyahoga No. 94261, 2011-Ohio-591, ¶ 23. "[I]t is an essential duty of defense counsel to request limiting instructions regarding evidence admitted for purposes of impeachment." *Id.*, citing *State v. Todd*, 8th Dist. Cuyahoga No. 42056, 1980 Ohio App. LEXIS 11779 (Nov. 20, 1980).

{¶ 53} The following exchange occurred over defense objections during cross-examination:

> State: In 2010, you pled in Lake County to the misuse of a credit card; is that correct?
>
> Defense: Objection, Your Honor.
>
> Court: Sidebar.
>
> Court: Overruled.
>
> Witness: Yes, sir.

(Tr. 404.) The state also elicited, over an objection subsequently sustained, that McCutchen's probation period was extended several times for smoking marijuana.

{¶ 54} Counsel's decision whether to request such an instruction is tactical. *State v. Croce*, 8th Dist. Cuyahoga No. 100244, 2014-Ohio-1627, ¶ 28, citing *State v. Schaim*, 65 Ohio St.3d 51, 61, 600 N.E.2d 661 (1992), fn. 9. Furthermore, McCutchen has failed to demonstrate that, but for this error, the outcome of the trial would have been different.

{¶ 55} In addition, the trial court issued a general instruction regarding judging the credibility of witnesses. This court determined in *State v. Croce*, 8th Dist. Cuyahoga No. 100244, 2014-Ohio-1627, "that counsel's failure to request a limiting instruction, when the court gave a general instruction on credibility, does not constitute ineffective assistance of counsel." *Id.* at ¶ 29. For that reason, we find that no prejudice resulted.

{¶ 56} The second assigned error is overruled.

### C. Cumulative error

{¶ 57} McCutchen argues that the cumulative effect of the errors in this case deprived McCutchen of his constitutionally guaranteed right to a fair trial. Under the doctrine of cumulative error,

> a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal. *State v. DeMarco*, 31 Ohio St.3d 191, 196-197, 509 N.E.2d 1256. *See also State v Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E.2d 955, 132. Moreover, "errors cannot become prejudicial by sheer weight of numbers." *State v. Hill*, 75 Ohio St.3d at 212, 1996-Ohio-222, 661 N.E.2d 1068.

*State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 64. The argument fails in the face of our finding that no errors were committed. *Id.* at ¶ 66.

{¶ 58} Moreover, McCutchen has not demonstrated that "there was a substantial violation of any of defense counsel's essential duties" and "that he was materially prejudiced by counsel's ineffectiveness." *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 139, citing *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988).

{¶ 59} The third assigned error also lacks merit.

## IV. Conclusion

{¶ 60} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR